LINCOLN LIFE INSURANCE COMPANY v. MATTIE P. MAYBERRY

No. A-8195. Decided May 17, 1961
Rehearing overruled July 26, 1961
(347 S. W. 2d Series 598)

*Turpin, Kerr, Smith & Dyer* and *Max N. Osborn,* of Midland, for petitioner.

*Culver & Culver,* of Midland, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

This suit was brought on an insurance policy insuring the life of an infant female who died two days after the policy was issued and delivered. A jury found that the child was in sound health on September 1, 1958, the date of issue of the policy. The trial court entered judgment for the beneficiary, Mattie P. Mayberry, the mother of the child and the respondent here. The Court of Civil Appeals has affirmed. 341 S.W. 2d 199.

The petitioner, Insurance Company, maintains that there is no evidence in the record to support the jury's finding and with that proposition we agree.

One clause in the policy reads in part as follows:

"WHEN POLICY IS VOIDABLE — This policy shall be voidable by the Company if on its date of issue the insured is not in sound health, * * *."

■■ The stipulation in a policy of insurance that the insured must be in sound health on the date of the issuance of the policy is valid and often is written as a condition precedent to the policy's becoming effective. Nor will the good faith on the part of the insured in believing that he was in sound health authorize a recovery if in fact he was at the time suffering from an ailment of a substantial nature which continued and ultimately caused his death. American National Insurance Co. v. Lawson, 133 Tex. 146, 127 S.W. 2d 294; Wright v. Federal Life Insurance Co., Tex. Com. App., 248 S.W. 325; Southern Surety Co. v. Benton, Tex. Com. App., 280 S.W. 551.

The infant was born August 6, 1958. The insurance application was taken on August 15, 1958. The policy bore the date of issue as of September 1, 1958. The policy was delivered by the company agent to the mother of the beneficiary in Midland

some time between 9:00 and 10:00 o'clock on the morning of September 1st.

On the 31st day of August the mother, accompanied by her father, traveled by automobile from Midland to Wichita Falls, taking the 3½ weeks old baby with her. They left Midland about 9:00 o'clock p.m. and arrived in Wichita Falls about 3:00 o'clock on the morning of September 1st. The mother testified that the baby slept most of the way but waked up fretting and crying and refused to take her bottle when they were five or six miles from Wichita Falls. She and her father became alarmed about the child's condition and proceeded almost directly to the hospital in that city arriving there about 3:30 a.m.

A registered nurse employed at the hospital testified that when the child reached the hospital she appeared to be quite ill and that the mother told her that the baby had been sick for about 2½ days with spells of diarrhea and vomiting. Dr. Dean, who attended the baby, was called to the emergency room at the hospital at about 5:00 o'clock. He also testified that the mother gave him a history of diarrhea and vomiting for the previous two or three days. He found the pulse very rapid, the eyes were sunken and dull in appearance; the mucous membranes were dry, the tongue was dry and shrunken, the skin turgor was very poor and renal failure had begun. Examination revealed that the child was quite dehydrated caused by loss of body fluid. This condition was confirmed by laboratory analysis from a complete blood count. The child was found to be acidotic manifested by rapid respiration. The acidity was the result of extreme dehydration. In the opinion of the doctor the loss of fluid must have been caused from diarrhea or vomiting or excessive kidney action. The doctor testified that at the time he saw the infant she had no better than a fifty-fifty chance of survival. The infant was in the hospital continuously until she died early on the morning of September 3rd. The medical testimony is that dehydration is necessarily progressive and in the case of this infant had reached such an acute stage that the condition could not be alleviated and resulted in the infant's death. That such condition of dehydration could not have possibly come about in a period of a few hours, therefore the child could not have been in good health at the beginning of the day of September 1st.

■ It is respondent's contention that the infant was in sound health so far as her appearance was concerned until after midnight and that the policy became effective at 12:01 a.m. on

September 1st while the child was in sound health and that the insured is not required to be in sound health during the entire day of the date of issue. Assuming that this is a correct statement of the law[1] nevertheless we say that under the facts in this case the infant was not in good health during any part of the day of September 1st.

The mother did testify that the infant had not had diarrhea or vomiting spells prior to its admission into the hospital and that at all times since its birth it appeared to be in good health until shortly before she arrived in Wichita Falls. The beneficiary's mother who had assisted in caring for the child since birth corroborated that testimony and asserted that the child had seemed normal and in good health in every respect until she last saw her about 9:00 o'clock on the evening of August 31st and that the child had never been afflicted with diarrhea or vomiting at any time that she knew of.

The respondent-beneficiary relies upon Coxson v. Atlanta Life Insurance Co., 142 Tex. 544, 179 S.W. 2d 943 and Clark v. National Life & Accident Insurance Co., 145 Tex. 575, 200 S.W. 2d 820, for the proposition that with respect to the inquiry into the fact as to whether the insured is in sound health, the opinion of experts is not conclusive and that lay testimony will raise a fact question despite expert testimony to the contrary. On this basis it is urged that, since the grandmother who had assisted in the care of the baby since its birth was of the opinion that the baby was at all times in good health until she last saw her and that the mother testified that she observed nothing to indicate but what the baby was in good health until some time after midnight; that the child had never had any spells of vomiting or suffered from diarrhea, this testimony brings the case squarely within our holdings in the afore-mentioned cases. They assert that the difference between the facts there and here is one of degree only and that the shortness of time does not create a material distinction.

On the other hand it is to be pointed out that in the Clark case the insured lived nearly two years after the issuance of the policy and while the court holds that the question of whether or not the insured was "in good health" was an issue of fact

---

1  44 C.J.S., Insurance, § 237;

National Life & Accident Insurance Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886;

Metropolitan Life Insurance Co. v. Thompson, 20 Ga. App. 706, 93 S.E. 299.

to be determined by the jury, nevertheless the controlling question was said to be whether or not as a matter of law the insured made false answers in his application with fraudulent intent.

In Coxson v. Atlanta the insured died something over a year after the issuance of the policy and lay testimony was held to raise a fact question as to the state of insured's health at the date of issuance of the policy notwithstanding an examination conducted some two months thereafter revealed, in the doctor's opinion, a tubercular condition of two and one-half years duration. The court points out that the testimony that the insured appeared to be in good health and continued his usual work in the customary manner was sufficient to controvert that of the physician, particularly since the physician was expressing an opinion as to the condition of the insured's health at a time more than two months before the examination. The court further points out that the opinion of experts is not necessarily conclusive unless the matter is of such a nature, scientific or otherwise, that the trier of facts is not competent to form an opinion.[2]

■ However, we are confronted here with medical testimony as to the condition of the infant's state of health shortly before its admission to the hospital. And that testimony, coupled with what we think is common knowledge that an infant when received into the hospital in such an advanced stage of dehydration as to render its survival very problematical and which did result in death some 48 hours thereafter, could not have sustained this loss of body fluids in two or three hours' time, and could not possibly have been in good health at 12:01 on the morning of September 1st, becomes conclusive. We therefore say that the evidence to the contrary does not amount to more than a scintilla[3] and there is no competent evidence to sustain the findings of the jury that the infant was in sound health on the day this policy became effective.

The case must be reversed and rendered for the defendant and that the respondent take nothing. It is so ordered.

2. For example see the following:
State v. Dickey, Tex. Civ. App., 158 S.W. 2d 844, wr. ref. w.m.
Travelers Ins. Co. v. Blazier, Tex. Civ. App., 228 S.W. 2d 217, wr. dism.;
Scott v. Liberty Mutual Ins. Co., Tex. Civ. App., 204 S.W. 2d 16, ref. n.r.e.
3. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.