## TEXAS RESERVE LIFE INSURANCE COMPANY, Appellant,

v.

### Modena DEES, Appellee.

No. 14051.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 20, 1963.

Rehearing Denied May 8, 1963.

Second Motion for Rehearing Denied June 12, 1963.

Morriss, Morriss, Boatwright & Lewis, San Antonio, Huson & Bissett, Refugio, for appellant.

Hill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, Scanio & Teer, Refugio, for appellee.

MURRAY, Chief Justice.

This suit was instituted by appellant, Texas Reserve Life Insurance Company,

against appellee, Modena Dees, to cancel a life insurance policy issued by appellant upon the life of R. B. Dees, hereinafter referred to as insured, in which appellee was named beneficiary. Cancellation was sought upon the grounds that insured was not in good health in accordance with the provisions of the policy at the time of its delivery to him, and that in the application for insurance insured made false statements about his physical condition, which statements were relied on by appellant in issuing the policy in question. Appellee answered and filed a cross-action seeking a recovery upon the policy, 12% penalty and attorney's fees. Upon a jury verdict, the trial court rendered judgment in favor of appellee as prayed for in her cross-action, from which judgment appellant has prosecuted this appeal.

■ The jury answered Special Issues Nos. 1, 2, 8 and 14, as follows:

No. 1. That insured was in good health on the date the policy was issued, to-wit, July 22, 1959.

No. 2. That the negative answer of insured in his application for insurance, dated April 2, 1959, to the question, "Have you ever had any disease of the heart?" was not false.

No. 8. That the answer "Yes" to the question "Are you now in good health?" made in the application of R. B. Dees to the Insurance Company dated April 2, 1959, was not false.

No. 14. That insured's answer "No" to the question, "Are there any circumstances known to you which might affect your state of health?" made by him in the application for insurance on April 2, 1959, was not false.

Subsidiary issues relating to the above issues were conditionally submitted and were therefore not answered.

Appellant's first contention is that the trial court erred in not granting it a judgment non obstante veredicto. Its motion was based upon the contention that there was no evidence to support the jury's answers to Issues Nos. 1, 2, 8 and 14, and that the matters inquired about were conclusively established as being just the opposite to the answers of the jury.

The policy provided that it was not to become effective unless delivered to insured while he was alive and in good health. Appellant contends that on July 22, 1959, insured had a bad heart condition and was therefore not in good health. The evidence shows that on January 19, 1959, insured went to the office of Dr. Williford of Corpus Christi for a check-up and, after an examination, was told by Dr. Williford that he was suffering with arteriosclerotic heart disease with angina pectoris. In May, 1959, insured again visited Dr. Williford, who confirmed his former diagnosis and advised that insured was suffering with arteriosclerotic heart disease with angina pectoris. On October 13, 1959, insured again saw Dr. Williford professionally. Dr. Williford continued his diagnosis and advice of arteriosclerotic heart disease with angina pectoris. On January 14, 1960, insured was found dead in the street behind the post office in Woodsboro, where he resided.

Before the policy was issued to insured on July 22, 1959, he was told by insurer that he would have to be given a physical examination by Dr. Arch C. Koontz of Woodsboro, Texas. Insured was examined by Dr. Koontz on June 8, 1959, at which time, in answer to an inquiry as to whether he had ever had a blood test, X-ray, basal metabolism, electro-cardiograph or health examination, he stated that in 1958 he had a "check-up." Insured was 5 feet, 11½ inches in height, and weighed 158 pounds on the day he was examined by Dr. Koontz.

Lay witnesses who were in a position to know, testified that during 1958 and 1959, and until his death in January, 1960, insured was in apparent robust health, working hard and never losing a day from work on account of sickness. He held not only

one job but two. He worked for the Union Producing Company, and after hours as a self-employed plumber. He worked hard, climbing under houses and connecting plumbing. He never complained of shortness of breath or of pains in his chest. He was a strong man.

His visit to Dr. Williford was made at the suggestion of his daughter because he was suffering with bronchitis, and he thought while there it would be well to have a check-up. Dr. Williford gave him a prescription for nitroglycerin pills to be taken by him in case he should have chest pains. He had some of these pills on his person at the time of his death, but no one ever saw him take one of the pills.

■ A death certificate was admitted in evidence, showing insured's death was caused by "Coronary Occlusion," but this certificate was improperly admitted because the Justice of the Peace who made it, admitted that it was based upon hearsay, and the certificate was not signed by the State Registrar, and therefore was not admissible under the provisions of Rule 54a of Art. 4477, Vernon's Ann.Civ.Stats. Armstrong v. Employers Casualty Co., Tex.Civ.App., 357 S.W.2d 168, 170; Folse v. Monroe, Tex.Civ.App., 190 S.W.2d 604; Universal Life & Accident Ins. Co. v. Ledezma, Tex. Civ.App., 61 S.W.2d 165; Washington National Ins. Co. v. Chavez, Tex.Civ.App., 106 S.W.2d 751.

Both the Justice of the Peace and Dr. Williford ultimately testified that they did not know the cause of insured's death. Dr. Arch C. Koontz, who gave insured a physical examination before the policy was issued, and who viewed the body of insured and pronounced him dead was not called as a witness. The record fails to show that insured's death was caused by the heart condition found to have· existed by Dr. Williford at the time he gave insured the "check-up" on January 19, 1959. A fact issue was raised as to whether insured was in good health on July 22, 1959, when the policy of insurance was delivered to him.

The jury's finding that he was in good health was not so against the great weight and preponderance of the evidence as to be clearly wrong. Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; Vann v. National Life & Accident Ins. Co., Tex. Com.App., 24 S.W.2d 347.

Appellant relies strongly upon the cases of Lincoln Income Life Ins. Co. v. Mayberry, 162 Tex. 492, 347 S.W.2d 598, and Texas Prudential Ins. Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242. These two cases are distinguishable from the Coxson and Vann cases, in that in both of them it was conclusively shown that the cause of death of the insured was the disease with which insured was indisputably seriously afflicted at the time the policy was issued.

In the case at bar the evidence is sufficient to support the findings of the jury in answer to·Issues Nos. 2, 8 and 14, and they are not so against the great weight and preponderance of the evidence as to be clearly wrong.

■ The trial court did not err in defining the term "good health" in connection with Special Issue No. 1, and in failing and refusing to submit the definition of "good health" as tendered by appellant. The definition given by the trial court is as follows:

"In connection with the above Special Issue, you are instructed that 'good health' does not mean perfect health; but rather it means a state of health free from any disease that affects the general soundness and healthfulness of the system seriously, that is, that the Insured be not afflicted with a disease or bodily infirmity of a substantial nature, which affects the Insured's general health and which clearly and materially increases the risk to be assumed by the Insurer."

This definition was not subject to the objection made by appellant to the effect that it placed a more onerous burden upon it than is required by law. Sovereign Camp, W. O. W. v. Derrick, Tex.Civ.App., 64

S.W.2d 982; Vann v. National Life & Accident Ins. Co., supra.

 The trial court did not err in entering judgment for the statutory penalty and attorney's fees, because there was no finding that appellant had just cause for refusing to tender the face amount of the policy within thirty days after demand for payment was made. In the first place, the parties stipulated that such a jury finding was unnecessary, and in the second place, the burden of securing a favorable finding was on appellant. Reserve Life Ins. Co. v. Ross, Tex.Civ.App., 356 S.W.2d 393, 394; Art. 3.62 Vernon's Ann.Ins.Code.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant earnestly argues that the jury's finding, to the effect that insured's answer, in his application for insurance, that he had never had any disease of the heart, was not false, was so against the great weight and preponderance of the evidence as to be clearly wrong. We adhere to our original holding, and, in addition to what we said in our original opinion, add the following:

There was one medical witness, and he testified, in addition to those matters stated in the opinion, that he gave certain tests in making his diagnosis. He said that Dees' heart beat faster after exercise, but there was evidence that this was normal not only for a man forty-nine years old but also for a younger man. The doctor's records reflected that the heart "Sounds of good quality." He prescribed no rest, hospitalization, or that Dees quit his work. His records showed that the patient "has had no true episodes of angina, although he has had a couple of episodes marked by a little shortness of breath, at which time he immediately stopped and found some relaxation." He testified that the electrocardiogram demonstrated no evidence of heart damage. He said that arteriosclerosis comes with advancing age and that he would expect to find some arteriosclerosis in the coronary arteries of any man of Dees' age. He stated that many persons who have had angina on occasions will go for years with no further sign of recurring angina. In our opinion, from all the evidence, the jury was within its province in concluding that Dees' condition was like that to which all men forty-nine years of age are heir to.

Appellant's motion is in all things overruled.