**The NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Rufus D. SHERN, Appellee.**

**No. 11285.**

Court of Civil Appeals of Texas.

Austin.

April 14, 1965.

Heath & Davis, Dudley D. McCalla, Austin, for appellant.

Niemann & Babb, J. Boone Baker, Austin, for appellee.

ARCHER, Chief Justice.

This is a suit to recover on a life insurance policy issued by the defendant on October 1, 1962 upon the life of Colasco Taylor Shern, who died January 25, 1963, by Rufus D. Shern, beneficiary.

The defendant denied liability on the ground that Mrs. Shern was not in sound health on the effective date of the policy, because she was a lifelong asthmatic and was afflicted with the serious disease of emphysema, and that there had been no compliance with that paragraph of the policy which provided:

"This policy shall take effect on the date of issue, provided the insured is then alive and in sound health, but not otherwise."

The case was tried with the aid of a jury and in answer to Special Issue No. 1 found that Mrs. Shern was in sound health on October 1, 1962.

The court defined "sound health" as follows:

"The term 'sound health' as used in this charge does not mean perfect health, nor absolute perfection, but, a state of health free from any disease or ailment that materially affects the general soundness and healthfulness of the system seriously, that is, that the insured be not affected with a disease or bodily infirmity of a substantial nature which affects the insured's general health, and which clearly and materially increases the risk to be assumed by the insurer."

The court, based on the jury verdict, entered judgment for plaintiff for the face of the policy, $1,500.00 with 12% damages, attorneys' fees in the sum of $675.00 and for 6% interest.

The appeal is founded on four points and are that the court erred in overruling defendant's motion non obstante veredicto, that there is no evidence to support the jury finding that the insured was in sound health on the effective date of the policy because the evidence is undisputed that she was a severe asthmatic and afflicted with the serious disease of emphysema at such time, that the finding of the jury is against the great weight and preponderance of the evidence and clearly wrong, and that the definition of sound health is contrary to the law of this State.

The term "no evidence" does not mean literally no evidence at all, it com-

prehends those situations wherein by the application of established principles of law, the evidence is deemed legally insufficient to establish an asserted proposition of fact.

Kirkpatrick v. Raggio, Tex.Civ.App., 319 S.W.2d 362, er. ref., n. r. e.

Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 is a case defining "Against the great weight and preponderance of the evidence" most widely quoted.

There is no dispute but that Mrs. Shern was a severe asthmatic and had been all of her life, and was afflicted with the disease of emphysema, but there is dispute as to the effect of these conditions.

Dr. S. H. Dryden testified that he had treated Mrs. Shern for a number of years and that he saw her two days before the policy was issued and that she had asthma and emphysema then. The doctor described asthma and how it affects individuals, and that emphysema was a disease of the lungs, a stretching of the lung tissue, and results with all patients that have asthma over a period of time.

The following questions and answers were made:

"Q  Now, Doctor, in this case there's a very important question that turns on whether on October 1st, 1962, Mrs. Shern was in sound health. On the next day, next two days, October 1, she was issued a policy of insurance. And I believe you saw her on September the 29th, 1962. In your opinion, Doctor, on September 29th, when you saw her, was she in sound health?

"MR. McCALLA: Just a moment, please, Doctor.

"Your Honor, I believe that's an ultimate issue in this case upon which, and it involves an interpretation of the laws upon which the Court has not charged the Jury, so I fail to see how he can answer.

"THE COURT: I will overrule the objection. Of course, I think you can go into that his definition of it, or you can give a definition of what, but he's an expert.

"MR. McCALLA: All right.

"THE COURT: I overrule the objection.

"Q  Doctor I'm going to give you a definition of sound health. The Courts in Texas, Doctor, generally definte sound health this way— that it means a state of—

"THE COURT: Maybe it would be better if you would prefix, if, if the Court defines.

"Q  Doctor, if the Court should define sound health in this manner, what would be your answer as to whether or not she was in sound health? If the Court defines it to mean a state of health free from any disease that affects the general soundness and healthfulness of the system seriously; that is that the insured be not afflicted with a disease of bodily infirmity of a substantial nature, which affects the insured's general health and which clearly and materially increases the risk to be assumed by the insuror. Assuming that definition, Doctor, would you say that Colasco Shern when you saw her September 29th, 1962, was in sound health?

"A  Mr. Babb, I would say that this patient on the 29th of September, 1962, was, her physical condition was the same as it had been the previous years that I saw her. She was able to do her work. I believe that on this occasion she was doing work at the school. I

don't know whether she was a cook or salad, prepared the salads, or what, but she did her usual work. She was in sound health insofar as her usual duties were concerned. The fact remains—

"MR. McCALLA: Pardon me, Doctor.

"A Yes, sir.

"MR. McCALLA: Your Honor, I'm sorry. He is going far afield from the question. Now, he's bringing in a lot of other things.

"THE COURT: All right. If you will just answer the question, Doctor.

"Q Doctor, wouldn't your opinion based on that definition, would you say she was in sound health: Not perfect health; sound health?

"A May I ask him to read that again, please, Judge?

"THE COURT: You may.

"Q It means a state of health free from any disease that affects the general soundness and healthfulness of the system seriously; that is that the insured be not afflicted with a disease or bodily infirmity of a substantial nature which affects the insured's general health and which clearly and materially increases the risk to be assumed by the insurer.

"A I would say she was not in sound health according to that definition.

"Q What part of it, Doctor, would you say—

"A Well, I think that she had a serious, I think emphysema even though this patient was able to carry on her usual duties of working, and actually she could have had emphysema for a number of years and existed and done her work. I still think that emphysema is a serious disease. It's a chronic debilitating disease that a patient can have for many years, but I don't think it can be taken lightly.

"Q Well, agreed that any disease to a certain extent is serious, isn't it, Doctor?

"A Well, I think it depends on whether acute or chronic or whether or not it can be cured, Mr. Babb. I suppose any of them are serious.

"Q Let me ask you this. The fact that she had emphysema or asthma, and she apparently had both of them, would that substantially lessen the length of her life, her life expectancy?

"A Yes, sir.

"Q How much?

"A I don't know.

\*    \*    \*    \*    \*    \*

"Q Doctor, I want to read you another definition. Assuming the Court gave this definition of sound health, what would be your opinion? Being, sound health is being without any important or serious disease and free from any ailment that seriously affects the general soundness of the physical system.

"A I have to still say she had a serious disease, Mr. Babb."

In the certificate of death of Mrs. Shern, Dr. Dryden gave as the immediate cause of death (a) ventricular fibrillation due to (b) emphysema.

The director of school cafeterias for Austin schools testified that Mrs. Shern worked as a cook. Mrs. Shern's mother testified that Mrs. Shern was born with asthma, but was able to work. These witnesses were not qualified to give testimony as to the effect the disease of emphysema had on Mrs. Shern.

■ Only an expert can testify upon a matter of such a nature, scientific or otherwise, and the trier of facts is not competent to form an opinion.

Lincoln Income Life Insurance Company v. Mayberry, 162 Tex. 492, 347 S.W.2d 598.

In Texas Prudential Insurance Company v. Dillard, 158 Tex. 15, 307 S.W.2d 242, our Supreme Court discussed "in good health" and held as a matter of law that the insured was not in good health.

■ Since we have concluded that, as a matter of law and as a matter of fact according to the testimony of Dr. Dryden that Mrs. Shern was not in sound health, it is unnecessary to determine if the definition of sound health as given was proper.

■ There is no probative evidence to support the finding of the jury that the insured, Mrs. Shern, was in sound health on October 1, 1962, and the burden was on the plaintiff to prove this issue by a preponderance of the evidence.

The judgment of the trial court is reversed and judgment rendered that plaintiff take nothing.

Reversed and rendered.