**Gloria CARTUSCIELLO, Executrix of the Estate of Michael Cartusciello, Appellant,**

v.

**ALLIED LIFE INSURANCE COMPANY OF TEXAS, Appellee.**

**No. 01–83–0206–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 3, 1983.

Floyd W. Freed, III, Donald W. Bankston, Houston, for appellant.

Jack Bailey, Houston, for appellee.

Before WARREN, SMITH and DOYLE, JJ.

OPINION

DOYLE, Justice.

This is an appeal from a summary judgment in favor of the appellee, denying the

appellant the proceeds of a credit life insurance policy.

The facts are simple and virtually undisputed. Michael Cartusciello obtained a credit life insurance policy from the appellee after executing an application on March 7, 1978, which stated in pertinent part as follows:

> *I hereby certify that I am in good health* and gainfully employed and that my age is as stated above, ... *I certify that I have read and that the information provided hereinbefore to the best of my knowledge is true* and I understand that any false statement, inaccuracy, or misrepresentation material to the risk, may be used by Allied Life Insurance Company of Texas to contest a claim. I have not been attended by a physician or been a patient in a hospital within the last 12 months preceding the date of this Application for any of the following impairments: Diseases of the (1) heart, (2) lungs or respiratory system, (3) stomach or digestive system, (4) brain or nervous system, or (5) cancer to any part of the body, except as follows: (Emphasis ours)

The policy was issued on March 7 and the insured died on March 8 from coronary thrombosis. Lymphatic leukemia was listed as the secondary cause of death. The appellee refused to pay the $53,078.28 which the appellant, executrix of the estate of Michael Cartusciello, claimed to be due under the policy. The appellant sued for the proceeds and the appellee filed an answer and cross-action denying liability under the policy for three reasons: First, a valid contract never issued because the insured breached the warranties contained in the insurance policy; second, there could be no recovery by the appellant because the conditions precedent to the issuance of a valid policy were never met by the decedent; and third, there was a misrepresentation by the decedent as to his state of health. The appellee then filed a motion for summary judgment urging the above three grounds as its basis for a take nothing judgment. The trial court granted the motion. The appellant urges two points of error.

The appellant's points of error jointly complain that the trial court erred in entering the take-nothing judgment against her and that the grounds set forth in the appellee's motion for summary judgment were not sufficient to support the granting of such motion.

In order to resolve the issues raised by appellant's contention, it is necessary to first resolve a pivotal issue, i.e., whether the life insurance policy herein involved contained a "good health warranty" or a mere "representation" of good health. Perhaps no case cited by the parties gives a more detailed discussion of the issues here presented than *Allied Bankers Life Ins. Co. v. De La Cerda,* 584 S.W.2d 529 (Tex.Civ. App.—Amarillo 1979, no writ). In *De La Cerda,* as in our case, the insurance company relied on breach of warranty and misrepresentation defenses. The pertinent policy provisions contained the phraseology, "I hereby certify that I am not being treated ...," for high blood pressure, cancer and other named diseases and conditions. While we do not deem it necessary to set out the entire certificates of insurance in *De La Cerda* or in our case, suffice it to say that they are almost identical. The *De La Cerda* court, 584 S.W.2d at 532 stated:

> The Texas Supreme Court has recognized that a warranty in an insurance contract is "'a statement made therein by the insured, which is susceptible to no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true.'" *Lane v. Travelers Indemnity Company,* 391 S.W.2d 399, 402 (Tex.1965), quoting *Phoenix Assur. Co. v. Munger Imp. Cotton-Mach. Mfg. Co.,* 92 Tex. 297, 49 S.W. 222, 225 (1898). In other words, the parties must have intended that the policy stand or fall on the literal truth or falsity of the statement in question. Such warranties which cause forfeiture are disfavored in the law. *Lane v. Travelers Indemnity Company, supra.* See also 12 J.A. Appleman, *Insurance Law & Practice* § 7342 (1943).

In affirming the judgment of the trial court which held that the insured's estate was entitled to proceeds of the credit life insurance policy, the *De La Cerda* court concluded, "... as a matter of law, that the statement of good health is a representation rather than a warranty."

We recognize the authorities which hold that certificates of insurance may be so worded that valid warranties of good health are provided.

In those cases where the courts have recognized a valid good health provision, the parties specifically agreed to condition the effectiveness of the policy upon the validity of the insured's warranty of good health. For example, in *Lincoln Income Life Ins. v. Mayberry,* 162 Tex. 492, 347 S.W.2d 598 (1961), the policy read as follows:

> *When Policy is Voidable*—This policy shall be voidable by the Company if on its date of issue the insured is not in sound health, ... *Id.* at 599.

Similar language is found in *Great American Reserve Ins. Co. v. Britton,* 406 S.W.2d 901 (Tex.1966): "the policy shall not take effect until it has been delivered to its owner during the lifetime and good health of the insured..." *Id.* at 903. The court has also found that a good health clause existed when the policy expressly stated that its effectiveness was conditioned upon the continued insurability of the proposed insured under acceptable company rules and practices. *United Savings Life Ins. v. Coulson,* 560 S.W.2d 211 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

In recent cases involving "good health provisions" the courts have required that the policy clearly state that the certificate of insurance is not binding unless the good health statement is true. The Texas Supreme Court addressed this issue in *Mayes v. Massachusetts, Mutual Life Ins. Co.,* 608 S.W.2d 612 (Tex.1980), and found that the insurance policy did not contain a good health provision because the effectiveness of the policy was under its terms, not dependent on the actual health of the insured, but rather on the truthfulness of the representations in the application at the time of delivery. *Id.* at 616.

■ In essence, since the law disfavors warranties which cause forfeiture, the Texas courts follow the modern trend of construing policies to prevent forfeitures. *See* 26 A.L.R.3d 1061, 1069 (and the cases cited therein.)

■ The appellee argues strongly that the policy provides that no insurance policy will be in effect for any person who made a material misrepresentation concerning his or her past or present health condition. The appellee submits that this language shows that the parties agreed that the policy would not be binding unless the good health statement was literally true. However, the court must construe the entire policy when determining whether a good health clause is a warranty or a representation. *Lane v. Travelers Indemnity Company, supra.* In other provisions of the policy, the appellee refers to "misrepresentation" twice. Under *De La Cerda,* these references to misrepresentations rather than warranties were enough for the court to find that the parties intended the statements to be representations.

■ The policy also refers to misstatements in the "Limit on Certain Defenses Provision", where it specifically states what conditions will void the policy. No mention is made of the effect of breach of warranty on the policy, or even that a warranty exists.

Moreover, the policy states that any misrepresentations material to the risk "may" be used to contest a claim. This language does not imply that the policy will definitely stand or fall on the literal good health of the applicant as required by *De La Cerda, Mayes,* and *Lane.* Under *Mayes,* this provision would merely require that the representations in the application be true at the time of delivery of the policy. The *Mayes* court held that this type of requirement was in the nature of a representation. 608 S.W.2d at 610.

We hold that the trial court erred in granting the appellee's summary judgment based on either contract theory because

there was no good health warranty in the policy.

There remains the final prong of the appellee's affirmative defenses, which is misrepresentation. The appellant strongly relies on the theory of this defense as set out in *Mayes.* The *Mayes* court set out the five elements of misrepresentation which must be pled and proven before the insurer may void a policy because of misrepresentation of the insured:

1. the making of the representation,
2. the falsity of the representation,
3. reliance thereon by the insurer,
4. the intent to deceive upon the part of the insured in making same, and,
5. the materiality of the representation. *Id.* at 616.

In *Mayes,* the court found that the signature section of the policy, which required the answers in the application be true and correct at the time of delivery of the policy, was in the nature of a representation and not a condition precedent. *Id.* The court also recognized that the policy did not contain a clear good health provision and therefore decided that the policy should be examined under the tort theory of misrepresentation. Under this theory, a fact issue always exists regarding the insured's intent to deceive, even if the misrepresentation were material to the insurer's risk. *Mayes, supra.*

This court relied on the *Mayes'* decision when it overruled a similar summary judgment decree in *Estate of Diggs v. Enterprise Life Ins. Co.,* 646 S.W.2d 573 (Tex.Civ.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). In *Diggs,* the appellee moved for summary judgment based on certain false material misrepresentations made by the deceased. The court held that summary judgment was improperly granted because the appellee failed to include evidence "of the insured's intent to deceive in the motion for summary judgment." *Id.* at 576. We find the policy language used in the present case to be similar to that used in both *Mayes* and *Diggs.* Both of these cases teach that intent to deceive or induce the issuance of an insurance policy can never be proved as a matter of law to establish the defense of misrepresentation. Intentional deception must be pled and proved as a matter of fact.

We sustain the appellant's points of error.

Because there was no summary judgment proof regarding Michael Cartusciello's intent to deceive, the trial court's granting of the summary judgment was improper. *Horne v. Charter National Insurance Company* 614 S.W.2d 182 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.).

The judgment of the trial court is reversed, and the cause is remanded for trial.