**Sharon Kay KEITH, Appellant,**

v.

**Randall Dean KEITH, Appellee.**

**No. 01–04–01214–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 20, 2006.

Herbert Lackshin, Steven Engelhardt, Houston, for Appellant.

Gus E. Pappas, Dabney & Pappas, Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

**OPINION**

TIM TAFT, Justice.

Appellant, Sharon Kay Keith ("Sharon"), appeals a sanctions order under Texas Rule of Civil Procedure 13 awarding appellee, Randall Dean Keith ("Randall"), $36,913.51 in attorney's fees and awarding Linda Thompson, attorney ad litem for the couple's minor children, $7,400.00 in attorney's fees. *See* TEX.R. CIV. P. 13. We

determine (1) whether the trial court erred by not giving Sharon the requisite 45–day notice of the first trial setting, (2) whether the trial court erred in failing to specify in its order the particulars of good cause, (3) whether the trial court erred in finding that Sharon's emergency petition to modify the parent-child relationship ("emergency petition") was groundless and filed in bad faith, (4) whether the trial court erred in providing that the attorney's fees were collectible as child support, (5) whether there was legally sufficient evidence to support the award of appellate attorney's fees, (6) whether the trial court erred in improperly conditioning the award of appellate attorney's fees, (7) whether the trial court erred in finding that there was legally and factually sufficient evidence to support the ad litem's attorney's fees, and (8) whether the trial court erred in awarding 10% post-judgment interest on the fees awarded in the sanctions judgment. We modify the judgment and affirm the judgment as modified.

## Facts

The final divorce decree had been rendered on December 17, 2002. On June 16, 2003, Sharon's attorney sent a letter to Randall's attorney, requesting to schedule a mediation of some issues concerning modification of the divorce decree. In response, Randall telephoned Sharon's attorney regarding his request for mediation and sent a letter in response to the request for mediation. On July 11, 2003, Sharon filed the emergency petition and requested that the court make temporary orders for the safety and welfare of the children. Sharon obtained a temporary restraining order ("TRO"), which, in part, enjoined Randall from leaving the United States with their three children. Randall had been scheduled to leave on a Caribbean cruise with his children on July 14, 2003, a trip that had been planned since May 2003.

In Sharon's affidavit, she alleged that Randall had spanked, isolated, and failed to take their autistic child to therapy; denied the children food; yelled at them frequently; returned the children with horrible sunburns and unexplained bruises; and failed to take the children to scheduled doctor's appointments. On July 14, 2003, the trial court dissolved the portion of the TRO that prohibited Randall from taking the children on the cruise.

On July 30, 2003, Randall filed a motion for sanctions, pursuant to rule 13 of the Texas Rules of Civil Procedure, alleging that Sharon's emergency petition was groundless and brought in bad faith and solely for the purposes of harassment. He further alleged that Sharon's emergency petition was a direct attempt to sabotage and to thwart his family's vacation plans. On August 6, 2003, Randall filed a counter-petition seeking both modification of the divorce decree and attorney's fees and expenses through trial and appeal. On September 16, 2003, Sharon filed a notice of non-suit of her emergency petition's claim.

The trial court held two sanctions hearings on October 16, 2003 and October 22, 2003. During the hearings, the trial court considered Randall's motion for sanctions and the affirmative claim for attorney's fees asserted in Randall's counter-petition. On July 12, 2004, the trial court entered an "Order Granting Respondent's Counterclaims, Opposed Motion For Sanctions Pursuant to Rule 13 and Judgment For Attorney's Fees." In the July 12 order, the court granted Randall's motion for sanctions, finding that Sharon's emergency petition had been groundless and brought in bad faith. The court awarded attorney's fees to Randall and Thompson, making the fees collectible as child support. The court provided in the order that "[i]t is ordered that said [$36,913.51] money judgment shall be reduced to Twenty–Six

Thousand Nine Hundred Thirteen Dollars and 51/100 ($26,913.51) if this case is not appealed by either party to the Supreme Court resulting in a ruling adverse to Sharon Kay Keith" and "it is further ordered that said money judgment shall be reduced to Nineteen Thousand Four Hundred Thirteen Dollars and 51/100 ($19,-413.51) if this case is not appealed by either party to the Court of Appeals resulting in a ruling adverse to Sharon Kay Keith." On August 20, 2004, the court entered findings of fact and conclusions of law regarding the sanctions.

### Final Judgment

■ Although neither party contends that the summary judgment is not a final, appealable order, we review sua sponte jurisdictional issues. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex.2004) (citing *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 678 (Tex.1990) (per curiam)).

■ It is well-established that, in general, an appeal may be taken only from a final judgment; that is, an appeal may be taken only from a judgment that disposes of all pending parties and claims.[1] *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). Absent a conventional trial on the merits, a judgment is final "if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Id.*

at 192–93. The law does not require that a final judgment be in any particular form. *Id.* at 195. The language of an order or judgment can make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties. *Id.* at 200. If the intent to finally dispose of the case is clear, "then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment." *Id.* Therefore, whether an order is a final judgment must be determined from its language and the record in the case. *Id.* at 195.

■ The parties have treated the July 12 order as a final judgment. *See Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 277 (Tex.1996) (finding that finality "must be resolved by a determination of the intention of the court as gathered from the language of the decree and record as a whole, aided on occasion by the conduct of the parties."); *see Lehmann*, 39 S.W.3d at 203. On appeal, neither of the parties contests that the July 12 order was the trial court's final judgment.[2] The title of the order appealed, "Order Granting *Respondent's Counterclaims*, Opposed *Motion For Sanctions* Pursuant to Rule 13 and Judgment For Attorney's Fees," although not dispositive, is indicative that the order was intended to be final. *See Cont'l Airlines, Inc.*, 920 S.W.2d at 277. Further, in this case, the judgment's "Mother Hubbard" language[3] and the conduct of the parties indicate the trial court's

---

1. This court assumes without deciding that the more stringent *Lehmann* test, rather than the *Aldridge* presumption, is the proper test to apply to this type of order. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191 (Tex.2001); *N.E. Indep. School Dist. v. Aldridge*, 400 S.W.2d 893 (Tex.1966).

2. Sharon filed her motion for new trial on August 9, 2004.

3. "Mother Hubbard language" is language indicating that all relief not granted was denied, thus indicating the trial court's intent to issue a final judgment. *See Lehmann*, 39 S.W.3d at 193. Sharon's motion for new trial was filed after such judgment was entered. *See* Tex.R. Civ. P. 329b.

intent to make the judgment final. *See Lehmann*, 39 S.W.3d at 195. The substance of the order recognizes Sharon's non-suit and specifically states that the order is to resolve all counterclaims, providing that "[t]he Court finds that SHARON KAY KEITH's request for affirmative relief was non-suited. This Order resolves *all* facts and claims between *all* parties regarding this case, *including all other Counterclaims filed therein.* All relief not granted herein is denied." (Emphasis added.) Additionally, the trial court assessed post-judgment interest, which is typically assessed in a final judgment. *See* TEX. FIN.CODE ANN. § 304.001 (Vernon 2005). Finally, because Sharon non-suited her emergency petition and because Randall represents on appeal that he never sought a hearing on any remaining issues of his counter-petition,[4] we are left with the firm implication that the court intended that the July 12, 2004 order, signed almost nine months after the October 22 hearing, be its final decree.

### Counter–Petition

■ Sharon argues in point of error one that the trial court erred in rendering judgment on Randall's counter-petition for attorney's fees because the court did not provide adequate notice, pursuant to Texas Rule of Civil Procedure 245, that the court would consider Randall's counter-claim for fees at the sanctions hearing. *See* TEX.R. CIV. P. 245. Although Sharon admits in her brief that the only issue before the court on October 16 and October 22 was Randall's motion for sanctions, she argues that the trial court "converted" the judgment for sanctions into a judgment for

attorney's fees on Randall's counter-claim because the trial court found in conclusion of law 16 that "Randall Dean Keith's Counter–Petition in Suit Affecting the Parent–Child Relationship requested attorney's fees and expenses, which Respondent/Counter Petitioner elected to pursue under his Motion for Sanctions."

■ A court must provide "reasonable notice of not less than 45 days to the parties of a first setting for trial. . . ." TEX.R. CIV. P. 245. However, when a party fails to object timely and specifically to the first trial setting on the basis of insufficiency of notice under rule 245, he preserves nothing for review. *State Farm Fire & Cas. Co. v. Price*, 845 S.W.2d 427, 432 (Tex.App.-Amarillo 1992, writ dism'd by agr.); *see* TEX.R.APP. P. 33.1. On appeal, Sharon has not demonstrated that she preserved this complaint.

■ Further, under the doctrine of invited error, an appellant may not complain on appeal that a court granted the appellant's own request. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex.2005); *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 835 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). Simply put, a party may not lead a trial court into error and then complain about it on appeal. *Id.* At the October 22 hearing, Sharon's attorney urged the court to consider the hearing as the final one in the case. The following excerpt from the record demonstrates that the parties agreed to consider both the attorney's fees on the motion for sanctions and the affirmative claim for attorney's fees in Randall's counter-petition at that hearing:

---

4. Randall's modification counter-petition was still outstanding after the October 2003 hearings because at that hearing, the trial court stated that it was adjudicating the sanctions motion and the counter-petition fees and that Randall needed to let the court know thereaf-

ter if he wished to pursue his modification claim. Given this background, the July 2004 judgment's recitation that it disposed of all counter-claims implies that Randall got back to the judge with a negative answer, as Randall states in his brief on appeal.

[RANDALL'S ATTORNEY]: The underlying lawsuit is still pending, Mr. Keith's counter-petition to modify.

[SHARON'S ATTORNEY]: This is the hearing for the motion to modify.

COURT: That's what I thought.

[RANDALL'S ATTORNEY]: This is the hearing on the motion for sanctions. The counter-petition—his counter-petition is still pending.

[SHARON'S ATTORNEY]: When he asked for attorney's fees that's what I thought we were here deciding.

COURT: Well, technically he may be correct in that he's got a cross-petition to modify. . . .

[SHARON'S ATTORNEY]: Judge, if I can respond? Mr. Stocker—[sic] and a couple of weeks ago I believe correctly stated that the only thing in the counter-petition is his request for fees, so this is the final hearing on the case. We nonsuited our case, he had his counter-petition ready, it wasn't a temporary hearing, it's—it is the final hearing.

COURT: Well—

[SHARON'S ATTORNEY]:—it addresses all the issues.

. . .

[SHARON'S ATTORNEY]: I would request the Court to make a finding that we heard the attorney's fees issue that was requested in [Randall's] petition.

THE COURT: Well, yeah, that's why we're here.

[SHARON'S ATTORNEY]: Thank you, Judge.

Sharon not only referred to the hearing as the final hearing several times, but she also made a request for the court to find that the attorney's fees claim in the counter-petition was heard at the sanctions hearing. Because Sharon requested that the sanctions hearing be the final hearing on the award of attorney's fees requested in Randall's counter-petition, she may not now complain that the hearings were not set for trial in accordance with Rule 245—even assuming that the court erred in so doing.

We overrule point of error one.

### Particularity Requirement and Merits

In points of error two and three, Sharon argues that the trial court erred "in finding Appellant's Emergency Petition was groundless and filed in bad faith" and "in failing to specify in its Findings of Facts and Conclusions of Law the particulars for good cause to support its Sanctions Order."

### A. Particularity

In evaluating an allegation of a rule 13 violation, "[c]ourts shall presume that pleadings, motions, and other papers are filed in good faith." TEX.R. CIV. P. 13. Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the allegedly groundless petition. *Bisby v. Dow Chem. Co.*, 931 S.W.2d 18, 21 (Tex. App.-Houston [1st Dist.] 1996, no writ). Rule 13 provides for sanctions if a party files a pleading that is either (1) groundless and brought in bad faith or (2) groundless and brought to harass. TEX.R. CIV. P. 13. Groundless means no basis in law or fact and not warranted by a good-faith argument for the extension, modification, or reversal of existing law. *Id.* If a pleading is filed in violation of rule 13, "the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule [of Civil Procedure] 215.2(b), upon the person who signed it, a represented party, or both." *Id.* No sanctions may be imposed under rule 13 "except for good

cause, the particulars of which must be stated in the sanctions order." *Id.*

Rule 13 is clear: the particulars for good cause "must be stated in the sanctions order." Tex.R. Civ. P. 13. When a rule of procedure is clear, unambiguous, and specific, we construe the rule's language according to its literal meaning. *Murphy v. Friendswood Dev. Co.*, 965 S.W.2d 708, 709 (Tex.App.-Houston [1st Dist.] 1998, no pet.). One purpose of the rule 13 particularity requirement is to justify the imposition of the sanctions and to give some evidence that the sanctions were carefully weighed and imposed in an appropriate manner when justified by the circumstances. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991); *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991).

"A trial court's failure to specify the good cause for sanctions in a sanction order may be an abuse of discretion." *Gaspard v. Beadle*, 36 S.W.3d 229, 239 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Bradt v. Sebek*, 14 S.W.3d 756, 769–70 (Tex.App.-Houston [1st Dist] 2000, pet. denied). A failure to make particular findings in the order may be harmless error, however, if the trial court's findings of fact and conclusions of law "supply the particulars of the good cause required by Rule 13." *Gaspard*, 36 S.W.3d at 239 (holding that trial court's failure to make particular findings in sanctions order was harmless error because trial court stated on record in its findings that "[The trial court] find[s] good cause to issue sanctions ... under Rule 13 for the conduct that happened after [the filing of the initial lawsuit] and the counterclaim and discovery and the whole proceedings of this case up to then. [The trial court also finds] that your conduct was not up to the standards of how lawyers should conduct themselves in a lawsuit ...."); *see Gor-*

*man v. Gorman*, 966 S.W.2d 858, 867–68 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (holding that trial court's failure to make particular findings in sanctions order was harmless because trial court's findings of fact stated that "[husband's] only purpose in filing suit was to keep [wife] from receiving the benefit of previous agreements, and that [husband] acted in concert with the plaintiff in the underlying suit, thereby unnecessarily extending the litigation.").

The order here did not recite the particular reasons supporting good cause to issue the sanction. The order simply stated: "This Court finds that the Emergency Petition to Modify Parent–Child Relationship ... was groundless and brought in bad faith, as is defined and contemplated by Rule 13 of the Texas Rules of Civil Procedure." Consequently, by neglecting adequately to recite the particular reasons supporting good cause to issue the sanctions, the order did not meet the particularity requirement of rule 13. *See* Tex.R. Civ. P. 13. However, the trial court entered findings of fact and conclusions of law reciting the bases for finding good cause:

1. Sharon Kay Keith's Emergency Petition to Modify Parent–Child Relationship was groundless and brought in bad faith.

1.(a) The Court Finds that the allegations made by Sharon Kay Keith in her affidavit attached to the emergency motion were so disparate from the testimony received in open court, including that from the affiant herself, and in interviews with the children to cause the Court to conclude that the affidavit was meant to deceive and mislead the Court.

1.(b) The emergency hearing given as a result of affiant's misleading affida-

vit was requested at a time that caused enormous inconvenience and expense to Randall Dean Keith.

1.(c) That [sic] the motion to modify supported by Sharon Kay Keith's affidavit was subsequently non-suited by Sharon Kay Keith.

The trial court's conclusions of law provide, in part, that

1. Sharon Kay Keith's Emergency Petition to Modify Parent–Child Relationship was filed in violation of Rule 13 of the Texas Rules of Civil Procedure, based on findings recited in 1, 1(a), 1(b) and 1(c).

. . .

14. All claims brought by Sharon Kay Keith in her Emergency Petition to Modify Parent–Child Relationship were non-suited.

Based on the foregoing, we hold that the trial court's failure to recite particular reasons supporting good cause in the sanctions order was harmless because its findings of fact and conclusions of law supplied the particulars of good cause required by rule 13. *See Gaspard*, 36 S.W.3d at 239; *Gorman*, 966 S.W.2d at 867–68.

## B. Merits

■ We review a trial court's rule 13 sanction's award for an abuse of discretion. *Downer v. Aquamarine Operators Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Gaspard*, 36 S.W.3d at 239. We examine the entire record and will overturn a trial court's discretionary ruling only if it was based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Mercedes–Benz Credit Corp. v.*

*Rhyne*, 925 S.W.2d 664, 666 (Tex.1996); *Downer*, 701 S.W.2d at 241–42.

The evidence supports the trial court's findings of fact 1, 1(a), 1(b), and 1(c) and conclusions of law 1 and 14. Here, the record supports the finding that Sharon filed an emergency motion without sufficient cause within the year following the entry of their divorce decree.[5] Sharon and Randall's divorce decree had a mediation requirement before the filing of any suits; however, no such mediation occurred. On June 16, 2003, Sharon's attorney sent a letter to Randall's attorney, requesting to schedule a mediation of some issues concerning modification of the divorce decree. In response, Randall telephoned Sharon's attorney and sent a letter within 10 days of having received Sharon's request for mediation. Randall did not receive any further communication from Sharon's attorney, which indicated to him that the matter was closed. On July 11, 2003, Sharon filed the emergency petition and requested that the trial court make temporary orders for the safety and welfare of the children.

At the July hearing, Sharon testified that Andrew, the couple's autistic son, was fearless of the water and that she was concerned about how he would react to being away from her. The trial court pointed out that nothing alleged in the emergency petition made the cruise any more of a concern than would otherwise exist with normal periods of access because the cruise was only five days and Randall had already had visitation with the children from July 1 to July 11. Further, Sharon testified to *ongoing* concerns, such as the children's being improperly disciplined and missing therapy sessions. Thus, the trial court dissolved part of the TRO because there did not seem to be

**5.** The final divorce decree was rendered on December 17, 2002. Sharon filed her emer-

gency motion on July 11, 2003.

anything in Sharon's affidavit to justify prohibiting the children from going on the trip.

At the October 16 sanctions hearing, Randall testified that there had not been a material or substantial change since the divorce decree had been entered. Specifically, Randall explained that the children's living environment at his residence had not changed, that the children's physical health was not endangered, that their emotional development was not significantly impaired, that he had at all times paid the child support ordered by the trial court, and that his income had not increased, but, rather, had decreased since the time of the divorce. Randall testified that Andrew was not spanked and isolated for saying "no," the children were not denied food or drink, they were not yelled at frequently, and his wife had always acted appropriately around the Keith children. Randall testified that the children were crying and upset about not being able to go on the cruise. When Randall asked the children about allegations that he had cut their nails too short and had not fed them, Emma and Kevin, two of the Keith children, responded that "Mommy twists our words." On October 15, 2003, the trial court had met and spoken with the children.

During the October 22 sanctions hearing, Sharon testified that she did not have personal knowledge of the allegations that she had made in her supporting affidavit for the TRO. She relied on statements made by her children and acknowledged that the children made statements that were sometimes untrue. Sharon admitted that although she alleged in the emergency petition that Emma's hair had been cut, the haircut had occurred before the divorce was granted, which was seven months prior to the filing of her emergency petition. Although Sharon had alleged

that Randall had not taken Andrew to therapy sessions, Randall explained that, after the divorce, Andrew's therapy was arranged so that it would not be scheduled during Randall's visitation, in order for Sharon to control Andrew's therapy sessions.

The record also reflects that Sharon spoke to an attorney regarding Randall's taking the children on a trip out of the country two months before Sharon filed the emergency petition; yet, Sharon waited until three days before the trip to file the petition. Randall testified that in August 2003, Sharon had taken the children on an eight- or nine-day vacation out of state and that she had not told him about the vacation prior to their departure. Sharon further admitted that she had called the police to Randall's home at least five times from January 2003 through October 2003. Sharon non-suited her emergency petition before the sanctions hearing.

We hold that the trial court did not abuse its discretion by finding that Sharon's emergency petition was groundless and filed in bad faith.

Accordingly, we overrule points of error two and three.

### Attorney's Fees as Child Support

In points of error four and five, Sharon argues that the trial court erred in making the attorney's fees awarded to Randall and the attorney ad litem collectible as child support. We construe Sharon's contentions as challenging the trial court's legal conclusion that attorney's fees may be awarded as child support.

We review the trial court's conclusions of law *de novo*. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994). As an appellate court, we must independently evaluate conclusions of law to deter-

mine their correctness and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P.,* 981 S.W.2d 916, 919 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Attorney's fees are permissibly taxed as child support when incurred during child-support enforcement proceedings. *In re Moers,* 104 S.W.3d 609, 611 (Tex. App.-Houston [1st Dist.] 2003, no pet.). The Legislature has permitted attorney's fees to be taxed as child support solely in Family Code section 157.167, which is limited to child-support enforcement proceedings. TEX. FAM.CODE ANN. § 157.167 (Vernon Supp.2005).

The trial court's findings of fact provided, in part, that

> 3. The attorney's fees and expenses incurred by the [sic] Randall Dean Keith were necessaries for the children.
>
> . . .
>
> 7. The attorney's fees and expenses incurred by Linda A. Thompson were necessaries for the representation of the children.

The trial court's conclusions of law provided, in part, that

> 6. The amount collectible by Randall Dean Keith is collectible as child support.
> 7. The amount collectible by Linda A. Thompson is collectible as child support.

The case before us does not involve attorney's fees and costs incurred in a child-support enforcement proceeding. Rather, this case involves attorney's fees and costs incurred defending against Sharon's emergency petition and prosecuting Randall's motion for sanctions against Sharon. Randall recognizes that this Court has ruled that attorney's fees can be taxed as

child support only in child-support enforcement proceedings. *See In re Moers,* 104 S.W.3d at 611. However, he argues that other appellate courts in Texas have awarded attorney's fees as necessaries in suits affecting the parent-child relationship. Accordingly, Randall asserts that the law is unsettled in this respect. Regardless of what other courts of appeals have done, we have previously held in *In re Moers* that attorney's fees can be taxed as child support solely in child-support enforcement proceedings. We are not persuaded that we should hold differently. Thus, we hold that the trial court erred in characterizing attorney's fees as child support. *See In re Moers,* 104 S.W.3d at 611–12.

We sustain points of error four and five.

### Appellate Attorney's Fees

The trial court conditionally awarded Randall $10,000 for appellate attorney's fees for an appeal to the Supreme Court and $7,500 for an appeal to the Court of Appeals. In point of error six, Sharon argues that "the trial court erred in awarding appellate attorney's fees which are not supported by the evidence." We construe this as a legal-sufficiency challenge.[6]

In *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005), the supreme court concluded, "the final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review ... [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.*

---

6. Sharon argues that there is "no evidence" to support the conclusion that the appellate attorney's fees were reasonable and necessary.

When reviewing a no-evidence point of error, "all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp., v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998).

 As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). The trial court's award of attorney's fees may include appellate attorney's fees. *Siegler v. Williams*, 658 S.W.2d 236, 241 (Tex.App.-Houston [1st Dist.] 1983, no writ). However, there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees. *Id.* Factors to be considered in reviewing the reasonableness of attorney's fees include the difficulties and complexities in the nature of the case; the amount of money involved; the time devoted by the attorney to the case; and the attorney's experience and skill in presenting the case. *Stuckey v. White*, 647 S.W.2d 35, 38 (Tex.App.-Houston [1st Dist.] 1982, no writ).

 An appellate court has the authority in looking at the entire record to draw on the common knowledge of the justices of the court and their legal experience and to view the issue in light of the experience and the amount in controversy. *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex.App.-Houston [1st Dist.]

2004, no pet.). The amount of an attorney's fees award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal without a clear showing of an abuse of that discretion. *Rowley v. Lake Area Nat'l Bank*, 976 S.W.2d 715, 724 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). A trial court abuses it discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Downer*, 701 S.W.2d at 241–42.

 Expert opinion evidence on the reasonableness and necessity of attorney's fees, although not conclusive, is competent evidence of those matters. *Lincoln Income Life Ins. Co. v. Mayberry*, 162 Tex. 492, 347 S.W.2d 598, 601 (1961); *see Moore v. Bank Midwest, N.A.* 39 S.W.3d 395, 406 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). The general rule is that an attorney's statements must be under oath to constitute evidence. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex.1997). However, such error is waived by the failure to object when the opponent knew or should have known that an objection was required. *Id.*

 Sharon argues that the only mention of appellate attorney's fees in the record occurred in a dialogue between Randall's attorney, Stocker, and the trial court. Sharon argues that at that time, Stocker was not under oath. However, the record reflects that Stocker was duly sworn and testified as a witness on the issue of his trial-court attorney's fees.[7] Stocker testified that he was a board-certified family-law lawyer. He testified as to his rate and that his fees were reasonable for the same or similar services in Harris

---

7. Stocker had been sworn as a witness on the issue of attorney's fees earlier in the trial. Before pronouncing its ruling, the trial court questioned the attorneys on the record regarding appellate fees.

County.[8] Later in the hearing and on the record, the trial court asked Stocker and Sharon's attorney to estimate the amount of appellate fees, if the case were to be appealed to the Court of Appeals and the Texas Supreme Court. Stocker estimated that the amount of appellate fees for the Court of Appeals would be $15,000 and for the Supreme Court would be $20,000; however, Sharon's attorney estimated that the amount of fees for an appeal would be $7,500 for an appeal to the Court of Appeals and $10,000 to the Supreme Court.[9]

Here, the court's questioning of both attorneys regarding their opinions on the amount of appellate attorney's fees is evidence within the meaning of *Banda* because it was evidentiary in nature. The trial court asked:

THE COURT: ... So if Glen [Sharon's attorney] or if you were to appeal, how much would the appellate [sic] have to pay to defend the appeal? Do you know or do you have an opinion?

[RANDALL'S ATTORNEY]: I have an opinion.

THE COURT: How much?

[RANDALL's ATTORNEY]: $15,000

THE COURT: Do you agree with that?

[SHARON's ATTORNEY]: My opinion would be $7,500, Judge, from this end; but my hourly rate is a lot less than [that of Randall's attorney], so the time might be approximately equal.

THE COURT: And how about if the losing party were not satisfied with the Court of Appeals' ruling and it was appealed to the Supreme Court, how much would be involved time wise to defend

an appeal to the Supreme Court, [Randall's attorney]?

[RANDALL's ATTORNEY]: Judge, if I might give you an estimated dollar amount based on my experience as opposed to time, I would say in the vicinity of $20,000.

COURT: [Sharon's attorney], what do you think?

MR. LILLY: $10,000 Judge but the time again, is approximately the same.

Sharon did not object to the court's questioning, despite the circumstances' clearly indicating that each attorney was tendering evidence on the record based on personal knowledge of appellate attorney's fees. Sharon thus waived the oath requirement. *See Banda*, 955 S.W.2d at 272.

Sharon nonetheless contends that Randall's attorney failed to state an exact dollar amount and to give the number of hours that it would take to appeal the suit. Sharon does not support her argument with any law requiring the reversal of an attorney's fees award due to the absence of such specific testimony. We should not impose such a requirement. *See George Pharis Chevrolet, Inc. v. Polk*, 661 S.W.2d 314, 318 (Tex.App.-Houston [1st Dist.] 1983, no writ) (holding that complained-of deficiency concerning number of hours spent and reasonable hourly rate goes only to weight of evidence and is not of magnitude that would render it insufficient as matter of law). Moreover, the trial court, in fact, awarded the amount of contingent appellate fees to which Sharon's attorney subscribed, and Sharon does not complain about her own expert's conclusion as to contingent appellate fees.[10]

---

8. Stocker testified that his rate was $350 per hour.

9. The trial court, which conditionally awarded Randall $10,000 in appellate fees for an appeal to the Supreme Court and $7,500 for

an appeal to the Court of Appeals, apparently adopted Sharon's attorney's fees testimony.

10. Sharon's attorney conceded that he and Stocker estimated that approximately the same amount of time would be spent on ap-

Accordingly, we hold that Randall produced more than a scintilla of evidence regarding appellate attorney's fees.

We overrule point of error six.

## Conditional Provision of Attorney's Fees

In points of error seven, eight, and nine, Sharon argues that the trial court erred because it improperly conditioned the appellate attorney's fees.

A trial court may not penalize a party for taking a successful appeal. *Moore*, 39 S.W.3d at 401; *Sipco Serv's Marine v. Wyatt Field Serv.*, 857 S.W.2d 602, 607 (Tex.App.-Houston [1st Dist.] 1993, no writ). An unconditional award of an appellant's appellate attorney's fees is improper. *Id.* at 607–08. Therefore, the trial court must condition the award of appellate attorney's fees upon the appellant's unsuccessful appeal. *Id.* at 607. However, an unconditional award of appellate attorney's fees does not require reversal; instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal. *Pao v. Brays Vill. E. Homeowners Ass'n*, 905 S.W.2d 35, 38–39 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 586 (Tex.App.-Austin 2003, no pet.).

Sharon argues that the portion of the judgment reciting that "it is ordered that said money judgment shall be reduced to Twenty–Six Thousand Nine Hundred Thirteen Dollars and 51/100 ($26,913.51) if this case is not appealed by either party to the Supreme Court resulting in a ruling adverse to Sharon Kay Keith" and that "it is further ordered that said money judgment shall be reduced to Nineteen Thousand Four Hundred Thirteen Dollars and 51/100 ($19,413.51) if this case is not appealed by either party to the Court of Appeals resulting in a ruling adverse to Sharon Kay Keith" imposes improper conditions. She contends that the terminology in the order is ambiguous and does not condition the award on an unsuccessful appeal because the order states that the judgment would be reduced if "the case is not appealed by either party to the Court of Appeals resulting in an adverse ruling to Sharon Kay Keith." [11]

We sustain points of error seven, eight, and nine and modify the district court's judgment so that the award of appellate attorney's fees is expressly and unambiguously contingent on Sharon's lack of success on appeal. We modify the trial court's order in part to state, "It is ordered that the Thirty–Six Thousand Nine Hundred Thirteen Dollars and 51/100 ($36,913.51) money judgment shall be reduced to Twenty–Six Thousand Nine Hundred Thirteen Dollars and 51/100 ($26,913.51) if this case is not appealed by either party to the Supreme Court or if the appeal results in a favorable ruling to Sharon Kay Keith" and "It is further ordered that said money judgment shall be reduced to Nineteen Thousand Four Hun-

---

peal to the Court of Appeals and the Supreme Court, but that the total amount was different because his hourly rate was a lot less than Stocker's.

**11.** The trial court's conclusions of law also stated:

 4. The indebtedness shall be reduced to $26,913.51 in the event the case is not

appealed by either party to the Court of Appeals resulting in an adverse ruling to Sharon Kay Keith.

dred Thirteen Dollars and 51/100 ($19,-413.51) if this case is not appealed by either party to the Court of Appeals or if the appeal results in a favorable ruling to Sharon Kay Keith."

### Ad Litem Attorney's Fees

■ In point of error 10, Sharon argues that "the trial court erred in awarding the ad litem a money judgment for attorney's fees because there is no evidence or insufficient evidence to support the ad litem's attorney's fees as reasonable and necessary." We construe this as a legal- and factual-sufficiency challenge. In support of her argument, Sharon contends that no sworn testimony was presented to demonstrate that the ad litem's fees were reasonable and necessary because, when Thompson spoke to the trial court on the subject of fees, she was not under oath and her statements thus did not constitute evidence.

■ The Texas Family Code authorizes a court to award reasonable attorney's fees to an attorney appointed to represent a child. Tex. Fam.Code. Ann. § 107.015 (Vernon 2005). Attorney's fees must be supported by competent evidence showing their reasonableness. *In re R.D.Y.,* 51 S.W.3d 314, 321, 325 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). The general rule is that an attorney's statements as to the reasonableness of his fees must be under oath to constitute evidence. *Banda,* 955 S.W.2d at 272. However, any error in failing to provide sworn testimony is waived by the failure to object when the opponent knew or should have known that an objection was required. *See id.*

The trial court asked Sharon if she wanted to cross-examine or to refute the statements of Thompson, and Sharon responded that she had no issue with Thompson's credentials, rate, or amount of time spent on the case. A party may not lead a trial court into error and then complain about it on appeal. *Texaco, Inc.,* 729 S.W.2d at 835; *Saper v. Rodgers,* 418 S.W.2d 874, 877 (Tex.App.-Houston [1st Dist.] 1967, writ ref'd n.r.e.). Accordingly, Sharon is estopped from complaining on appeal about the sufficiency of the evidence. *See Texaco, Inc.,* 729 S.W.2d at 835.

■ In any event, the record shows that Thompson clearly attempted to prove her request for attorney's fees at the hearing. Thompson stated during the sanctions hearing that she had worked 25 hours in the case, which had not been apportioned or addressed, and that by the end of the hearing, the hours that she worked in the case would have increased to 28 hours. Thompson also stated that her hourly billing rate was $275.00 per hour and that that amount was reasonable, customary, and necessary.

Therefore, even if Sharon were not estopped from complaining about the sufficiency of the evidence on appeal, we would hold that Thompson's statements to the court were legally and factually sufficient evidence to support the ad litem's attorney's fees as reasonable and necessary.

We overrule point of error 10.

### Post–Judgment Interest

■ In point of error 11, Sharon argues that "the trial court erred in awarding 10% post judgment interest on the money sanctions." [12]

---

12. The post-judgment interest rate is (1) the prime rate as published by the Federal Reserve Bank of New York on the date of com-putation; (2) 5% a year if the prime rate as published by the Federal Reserve Bank of New York is less than 5%; or (3) 15% a year

■ Except for fundamental error, which Sharon does not claim that this is, to preserve a complaint for appellate review, a party must present to the trial court a timely and specific request, objection, or motion. TEX.R.APP. P. 33.1(a). A complaint regarding the award of post-judgment interest must be preserved in the trial court by a motion to amend or to correct the judgment or by a motion for new trial. *See Allright, Inc. v. Pearson,* 735 S.W.2d 240, 240 (Tex.1987) (holding that error regarding award of pre-judgment interest must be preserved); *Miller v. Kendall,* 804 S.W.2d 933, 944 (Tex.App.-Houston [1st Dist.] 1990, no writ) (holding that motion to amend or to correct judgment or motion for new trial is proper vehicle for preserving error in judgment). Sharon did not object in these ways.

Accordingly, we hold that Sharon waived her objection to the court's calculation of post-judgment interest by not making it in the trial court. *See* TEX.R.APP. P. 33.1(a); *Wohlfahrt v. Holloway,* 172 S.W.3d 630, 640 (Tex.App.-Houston [14th Dist.] 2005, pet. den.) (holding that party waived argument regarding post-judgment interest rate by not making it in trial court); *Hachar v. Hachar,* 153 S.W.3d 138, 145 (Tex. App.-San Antonio 2004, no pet.); *El Paso Dev. Co. v. Berryman,* 769 S.W.2d 584, 592 (Tex.App.-Corpus Christi 1989, writ denied).

We overrule point of error 11.

### Conclusion

We modify the trial court's order to delete all of the order's provisions in any way characterizing the awarded attorney's fees as "child support" or "necessaries for the children." We also modify the trial court's order to state, "It is ordered that the Thirty–Six Thousand Nine Hundred Thirteen Dollars and 51/100 ($36,913.51) money judgment shall be reduced to Twenty–Six Thousand Nine Hundred Thirteen Dollars and 51/100 ($26,913.51) if this case is not appealed by either party to the Supreme Court or if the appeal results in a favorable ruling to Sharon Kay Keith" and "It is further ordered that said money judgment shall be reduced to Nineteen Thousand Four Hundred Thirteen Dollars and 51/100 ($19,413.51) if this case is not appealed by either party to the Court of Appeals or if the appeal results in a favorable ruling to Sharon Kay Keith."

We affirm the judgment as so modified.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent. This case involves a non-frivolous Suit Affecting the Parent Child Relationship (SAPCR) that needed to be tried or mediated. It was not, and one of the litigants was hit with huge sanctions. I believe the trial court clearly abused its discretion in awarding sanctions against Sharon and that the opinion of this Court affirming the trial court's judgment will have a chilling effect on the willingness of parents concerned for the safety of their children to approach the family courts. I would hold that (1) the

---

if the prime rate as published by the Federal Reserve Bank of New York is more than 15%. TEX. FIN.CODE ANN. § 304.003(c) (Vernon 2005).

> The order recites that "[i]t is ordered and decreed that Randall Dean Keith is granted a money judgement for necessary and reasonable attorney's fees and costs ... in the

amount of Thirty–Six Thousand Nine Hundred Thirteen Dollars and 51/100 ($36,-913.51) against Petitioner, Sharon Kay Keith, with such money judgment bearing interest at the rate of ten percent (10%) per annum beginning on October 23, 2003, and continuing thereafter until paid in full, for which let execution issue, if not paid."

sanctions order, even when read together with the trial court's findings of fact and conclusions of law, fails to state the grounds for sanctions with particularity, as required for Rule 13 sanctions, and that (2) even if the judgment survived that hurdle, Randall failed to carry his burden of proving that Sharon's suit was either groundless and brought in bad faith or groundless and harassing. I would reverse and render judgment for appellant.

## Standard of Review

The purpose of Rule 13 sanctions is to prevent pleading abuse. *Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex.App.-Dallas 1994, pet. denied); *see also Home Owners Funding Corp. of America v. Scheppler*, 815 S.W.2d 884, 888 (Tex.App.-Corpus Christi 1991, no pet.). Rule 13 provides for sanctions if a party files a pleading that is either (1) groundless and brought in bad faith or (2) groundless and brought to harass. TEX.R. CIV. P. 13; *see also Randolph v. Walker, L.L.P.*, 29 S.W.3d 271, 277 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). A suit is groundless for purposes of Rule 13 if it has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law." *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 668 (Tex.App.-Dallas 2003, no pet.) (quoting TEX.R. CIV. P. 13). "Bad faith is not simply bad judgment or negligence, but means the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *Id.* at 669; *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (quoting *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 828 (Tex.App.-Houston [14th Dist.] 1998, pet. denied)). "Harassment" is used "to describe words, gestures, and actions that tend to annoy, alarm, and verbally abuse another person." *Elkins*, 103 S.W.3d at 669. If a pleading is filed in violation of Rule 13, "the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule [of Civil Procedure] 215.2(b), upon the person who signed it, a represented party, or both." TEX.R. CIV. P. 13.[1] No sanctions may be imposed under Rule 13 "except for good cause, the particulars of which must be stated in the sanctions order." *Id.*

To establish a right to sanctions under Texas Rule of Civil Procedure 13, a party must first overcome the presumption that the pleadings are filed in good faith; that is, he must prove that the filing is "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *See Elkins*, 103 S.W.3d at 668–69; *Mattly*, 19 S.W.3d at 896; *Monroe*, 884 S.W.2d at 819. He must then plead and prove that the contentions in the pleading are groundless, *i.e.*, without any "basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX.R. CIV. P. 13.

To determine whether rule 13 sanctions are proper, the trial court must examine the circumstances existing at the time the party filed the pleading. *Elkins*, 103 S.W.3d at 668; *Monroe*, 884 S.W.2d at 817. Thus "it [is] imperative for the trial court to convene and conduct an evidentiary hearing.'" *Randolph*, 29 S.W.3d at 277 (quoting *Karagounis v. Property Co. of America*, 970 S.W.2d 761, 765 (Tex.App.-Amarillo 1998, pet. denied)). To sanction a party for filing a groundless pleading, the trial court has to find, based on facts in the record, that the party was on notice that

---

1. Rule 215.2(b) sanctions include striking pleadings and awarding attorneys' fees. *See* TEX.R. CIV. P. 215.2(b) (Vernon 2006).

the facts upon which the pleading was based were incorrect and that he, nevertheless, filed the pleading without making a reasonable inquiry into the facts. *See Bradt,* 14 S.W.3d at 763; *Monroe,* 884 S.W.2d at 819. "Reasonable inquiry means the amount of examination that is reasonable under the circumstances of the case." *Mattly,* 19 S.W.3d at 897 (quoting *Monroe,* 884 S.W.2d at 817).

No rule 13 sanctions may be imposed "except for good cause, the particulars of which must be stated in the sanctions order." TEX.R. CIV. P. 13; *Alpert,* 178 S.W.3d at 411; *Gorman v. Gorman,* 966 S.W.2d 858, 867 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Woodward v. Jaster,* 933 S.W.2d 777, 782 (Tex.App.-Austin 1996, no pet.); *Kahn v. Garcia,* 816 S.W.2d 131, 133 (Tex.App.-Houston [1st Dist.] 1991, no writ) ("Rule 13 imposes a duty on the trial court to point out with particularity the acts or omissions on which sanctions are based."). However, "a trial court's failure to make particular findings in a rule 13 order may constitute harmless error when the trial court's findings of fact and conclusions of law supply the particulars of good cause required by rule 13." *Gorman,* 966 S.W.2d at 867. The purpose of the particularity requirement is three-fold: it "(1) ensures that the trial court is held accountable and adheres to the standard of the rule; (2) requires the trial court to reflect carefully on its order before imposing sanctions; (3) informs the offending party of the particular conduct warranting sanction, for the purpose of deterring similar conduct in the future; and (4) enables the appellate court to review the order in light of the particular findings made by the trial court." *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 411 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

In reviewing an award of sanctions under Rule 13, we examine the entire record and will overturn a trial court's discretionary ruling if it was based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Alpert,* 178 S.W.3d at 410; *Randolph,* 29 S.W.3d at 276; *Monroe,* 884 S.W.2d at 816. We are limited to determining whether the trial court's action was arbitrary or unreasonable in light of all the circumstances in the particular case. *Downer v. Aquamarine Operators Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Randolph,* 29 S.W.3d at 276. We must determine whether the trial court acted without reference to any guiding rules and principles. *Downer,* 701 S.W.2d at 241–42; *Bradt v. Sebek,* 14 S.W.3d 756, 760 (Tex.App.-Houston [1st Dist.] 2000, pet. denied), *cert. denied sub nom Bradt v. Lilly,* 532 U.S. 905, 121 S.Ct. 1229, 149 L.Ed.2d 138 (2001).

The appropriateness of Rule 13 sanctions is determined under the same test used to determine whether sanctions for discovery abuse are just under Rule 215.2(b). *See* TEX.R. CIV. P. 215.2(b) ("[T]he court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are *just.*") (emphasis added); *Metzger v. Sebek,* 892 S.W.2d 20, 53 (Tex.App.-Houston [1st Dist.] 1994, writ denied). To be just, the sanction must be directed against the abuse and towards remedying the prejudice caused the innocent party. *Cire v. Cummings,* 134 S.W.3d 835, 839 (Tex. 2004); *Bradt,* 14 S.W.3d at 760. "[The] trial court may not impose a sanction that is more severe than necessary to satisfy its legitimate purpose." *Cire,* 134 S.W.3d at 839. In determining whether to impose sanctions, the trial court is obliged to determine whether the offensive conduct was referable to the attorney who filed the pleading, the party, or both. *Falk,* 974 S.W.2d at 825. A party should not be

sanctioned for the conduct of its counsel "unless the party is implicated apart from having entrusted its legal representation to counsel." *Bradt,* 14 S.W.3d at 769; *Metzger,* 892 S.W.2d at 52. "[T]he party must be implicated for his unique conduct separate from the attorney's representation, while the attorney may be generally liable for each groundless pleading." *Bradt,* 14 S.W.3d at 769. Thus, "we must (1) determine whether a direct relationship exists between the offending conduct and the sanctions imposed, and (2) whether the sanctions are excessive." *Metzger,* 892 S.W.2d at 53.

### A. Lack of Statement of Particulars to Support Sanctions

Under the express language of Rule 13, no sanctions may be imposed "except for good cause, the particulars of which must be stated in the sanction order." TEX.R. CIV. P. 13; *see Alpert,* 178 S.W.3d at 411; *Gorman,* 966 S.W.2d at 867. Since the purpose of the trial court's findings in this case was to satisfy the particularity requirement of a Rule 13 sanctions order, we, as a reviewing court, must examine the findings to see whether they contain facts justifying the imposition of sanctions. *See Mattly,* 19 S.W.3d at 896; *Gaspard v. Beadle,* 36 S.W.3d 229, 240 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

The trial court's sanctions order and judgment recited only, "This Court finds that the Emergency Petition to Modify Parent–Child Relationship ... was groundless and brought in bad faith, as is defined and contemplated by Rule 13 of the Texas Rules of Civil Procedure." The trial court's findings of fact in support of its conclusion that Sharon's petition to modify was groundless and brought in bad faith state:

(1a) "the allegations made by Sharon Kay Keith in her affidavit attached to the emergency motion were so dispa-

rate from the testimony received in open court, including that from the affiant herself, and in interviews with the children to cause the Court to conclude that the affidavit was meant to deceive and mislead the Court";

(1b) "[t]he emergency hearing given as a result of affiant's misleading affidavit was requested at a time that caused enormous inconvenience and expense to Randall Dean Keith"; and

(1c) "the motion to modify supported by Sharon Kay Keith's affidavit was subsequently non-suited by Sharon Kay Keith."

The court's conclusions of law provide, in relevant part:

(1) "Sharon Kay Keith's Emergency Petition to Modify Parent–Child Relationship was filed in violation of Rule 13 of the Texas Rules of Civil Procedure, based on findings recited in 1, 1(a), 1(b) and 1(c)," and (2) "[a]ll claims brought by Sharon Kay Keith in her Emergency Petition to Modify Parent–Child Relationship were nonsuited."

The trial court's first finding, that "the allegations made by Sharon Kay Keith in her affidavit attached to the emergency motion were so disparate from the testimony received in open court, including that from the affiant herself, and in interviews with the children to cause the Court to conclude that the affidavit was meant to deceive and mislead the Court," is entirely conclusory. The finding does not identify a single disparity between the pleadings and the testimony. It cannot even be determined by reading this finding whether the finding of an unidentified "disparity" between Sharon's affidavit and the evidence at the sanctions hearing is meant to support the conclusion that Sharon's pleadings in her SAPCR were groundless or

whether the finding is meant to support the conclusion that Sharon's pleadings were filed in bad faith, *i.e.*, to deceive and thus with a malicious intent. This conclusory finding does nothing, therefore, to satisfy the particularity requirement of Rule 13. Nor is there any other statement of fact in the trial court's sanctions order and judgment or its findings from which the trial court could have determined that Sharon's SAPCR was groundless, *i.e.*, without a basis in fact or law, or that it was filed in bad faith, *i.e.*, intended to deceive the court as to the merits of the suit.

The trial court's second finding, that "[t]he emergency hearing given as a result of affiant's misleading affidavit was requested at a time that caused enormous inconvenience and expense to Randall Dean Keith," is similarly conclusory and does nothing to support the trial court's holding that Sharon's suit was groundless and filed in bad faith. At most, if supported by the evidence at the sanctions hearing, this finding could support a holding that Sharon filed her SAPCR as an emergency motion for the purpose of harassment—a holding the trial court did *not* recite in the sanctions order and judgment as a ground for its sanctions award, although such a holding was sought by Randall. Thus, at most, the trial court's statement of particulars could satisfy only that element of a sanctions award that the court did *not* hold—that Sharon's SAPCR was filed with the intent of harassing Randall.

Nor does the trial court's third and final finding of fact—that Sharon non-suited her claims—support a finding of bad faith. Sharon testified at the sanctions hearing that she non-suited her Emergency Petition to Modify because the emergency created by Randall's taking the children on a cruise had passed and because Randall had filed a Motion for Alternate Dispute Resolution with the court. She further testified that she had requested that the same issues be mediated. Sharon's non-suit was thus evidence of her good faith intention to pursue her claims in mediation in reliance on Randall's professed willingness to mediate, not evidence of bad faith. *See Mattly*, 19 S.W.3d at 896–97 (when claims were non-suited to pursue a different avenue, record contained no evidence that non-suit was filed in bad faith).

Because the trial court's statement of particulars fails to state with specificity any facts that could supply the essential element of good cause to levy sanctions against Sharon, it fails to meet the criteria for a statement of particulars in support of a sanctions order required by rule 13. Consequently, it does not "ensure that the trial court is held accountable and adheres to the standard of the rule." *Alpert*, 178 S.W.3d at 411. It does not show that the trial court "reflect[ed] carefully on its order before imposing sanctions." *Id.* It does not "inform[ ] the offending party of the particular conduct warranting sanction, for the purpose of deterring similar conduct in the future." *Id.* And it does not "enable the appellate court to review the order in light of the particular findings made by the trial court." *Id.* Rather, to determine whether the trial court based its order on any evidence in the record at all, it is necessary for this court to review the record *de novo* without any guidance from the lower court. I would hold, therefore, that the trial court abused its discretion by entering a sanctions order that does not satisfy the particularity element of Rule 13. *See Mattly*, 19 S.W.3d at 896 ("Neither the sanctions order nor the findings of fact contain any facts justifying the imposition of sanctions. This failure by the court to comply with rule 13 is an abuse of discretion that renders the order unenforceable and warrants a reversal.").

I would sustain Sharon's point of error and would reverse and render judgment in her favor.

## B. Lack of Evidentiary Support for Sanctions

Even more disturbing than the trial court's failure to state the particulars underlying its sanctions award is the complete absence of evidentiary support for the trial court's conclusory findings. There is no evidence in the record of any material disparity between Sharon's affidavit in support of her SAPCR and the testimony by any witness at either the show cause hearing or the sanctions hearing. There is no evidence in the record that Sharon was on notice that the facts upon which her SAPCR was based were incorrect and that she, nevertheless, filed the pleading without making a reasonable inquiry into those facts. *See Bradt,* 14 S.W.3d at 763; *Monroe* 884 S.W.2d at 819. Rather, the testimony at both the show cause hearing on her TRO and at the sanctions hearing establishes that Sharon did investigate her claims about the children's treatment while in Randall's possession to the extent she was reasonably able and they were not groundless. Nor is there any evidence that Sharon filed her SAPCR with the malicious intent to deceive the court. Nor is there any evidence that she knowingly filed her petition three days before Randall was to take the children out of the country and set her motion for hearing on the day he was to leave in order to harass him. Rather, the evidence directly refutes the imputation to her of any deceitful or harassing purpose in either the filing or the timing of her emergency SAPCR. Nor is there any evidence

to support the necessary legal conclusion that the sanctions were properly related to Sharon's behavior or were properly apportioned to deter her from abusing the pleading process. Rather, the message sent by this case is the opposite of that intended by Rule 13. The message sent is that severe sanctions may be levied for the mere filing of an emergency motion to modify a conservatorship order, even when none of the legal requirements for the imposition of sanctions set out in Rule 13 is satisfied.

### Groundlessness of Sharon's Pleadings

A court may modify an order that provides for the terms and conditions of conservatorship or of the possession of a child—as Sharon sought here—"if modification would be in the best interest of the child and ... the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since ... the date of the rendition of the order." Tex. Fam.Code Ann. § 156.101(1) (Vernon Supp.2005). Sharon was thus required to plead and to prove (1) that circumstances had materially changed since the divorce was entered and Randall began exercising his periods of possession and (2) that modification would be in the best interest of the children. *See id.*

Whether there has been a material and substantial change of conditions affecting the child is normally determined by examining the evidence of changed circumstances occurring between the date of the order or judgment sought to be modified and the date of the filing of the motion to modify.[2] *Bukovich v. Bukovich,* 399 S.W.2d 528, 529 (Tex.1966); *Gibbs v.*

2. Unlike a suit for modification of the exclusive right to determine the primary residence of a child within a year of the rendition of the order, *see* Tex. Fam.Code Ann. § 156.102, a suit for modification of an order establishing pos-

session brought, like Sharon's, under section 156.101(1) of the Family Code is not required to be supported by affidavit. *See* Tex. Fam. Code Ann. § 156.101(1) (Vernon Supp.2005).

*Greenwood,* 651 S.W.2d 377, 378–79 (Tex. App.-Austin 1983, no writ). Factors that the court may consider in determining a child's best interest include (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking possession; (5) the programs available to assist these persons in promoting the best interest of the child; (6) the plans for the child by these persons; (7) the stability of the home; (8) the acts or omissions of the parent indicating that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex.1976); *Long v. Long,* 144 S.W.3d 64, 69–71 (Tex.App.-El Paso 2004, no pet.) (applying *Holley* factors in suit for modification).

Sharon's pleadings and affidavit recited facts in support of her claims that circumstances had materially and substantially changed for the worse since Randall's periods of possession had begun in December 2002 and that the children's emotional and physical safety was threatened by continuing the possession order without modification. Sharon testified in her affidavit in great detail to "several incidents [that] have happened which has [sic] caused me grave concern for the safety, mental and physical health of my children." The affidavit stated that the children had returned from periods of possession with their father telling her that Andrew, an autistic eight-year-old, had been "sent to his room and isolated for telling his father and step-mother 'no,'" which Sharon considered inappropriate for a child with his diagnosis. Andrew had returned from these visits "in a 'video-replay' mode" and with his self-talk "greatly heightened," and Randall had "brushed aside" her concerns about Andrew.

The affidavit further stated that the children had returned from their periods of possession with Randall complaining to her that they had been denied food, sent to their rooms, and not allowed to eat because they did not like what their stepmother cooked, that they had not been allowed to help themselves to anything but water, that they had begged not to be made to go back to their father's house, and that they had complained that they were "yelled at frequently" by their stepmother, were very frightened of her, and feared the repercussions if they stepped out of line at their father's house. The children had attempted to contact Sharon while in their father's possession and either were not allowed to do so or were monitored, and their father and step-mother had threatened to monitor them by hidden cameras. Sharon also testified that Randall's lack of attention to the children's personal care and well-being had "greatly affected" the children: they had returned from periods of possession with "horrible sun-burns and unexplained bruises"; their nails had been cut so short that they hurt; Emma's hair, which had never been cut, had been cut without Sharon's knowledge or consent; and the like.

Finally, the affidavit stated that the children had informed her that their father and step-mother were taking them to the Caribbean, but that Randall had not told her about the plans. She was "very concerned that their collective lack of diligence in the care and control of the children that they will be harmed" and "alarmed that Andrew would be subject to even harsher punishment from his father and his current spouse as this is not an experience that Andrew has ever been in and no preparations were made to acclimate to this trip."

To determine that Sharon's SAPCR was filed without any basis in law or fact, the

trial court had to determine on the basis of evidence in the record that the facts alleged in Sharon's pleadings and affidavit represented no change since the divorce decree and/or that those facts were incorrect and that Sharon had alleged them without a reasonable investigation. *See Bradt*, 14 S.W.3d at 763; *Monroe*, 884 S.W.2d at 819. Thus, Randall had the burden of proving that the facts alleged to underlie Sharon's allegation that children's treatment in his care since the divorce did not threaten their emotional and physical needs were incorrect and made without investigation. He had to prove that he was not violating court orders by refusing to attend parenting classes and by failing to take Andrew to therapy, as Sharon alleged, that he was not endangering Andrew's physical safety by failing to look out for his safety around water; and that there were no problems with his parenting abilities during his periods of possession, in that he was not disciplining the children inappropriately, causing Andrew to regress in his behavior, and that he was not allowing them to be hurt. *See Long*, 144 S.W.3d at 69–71 (establishing factors in determining best interests of the child in petition to modify conservatorship order).

Far from establishing that the facts in Sharon's SAPCR were false and were made without an investigation into their truth or falsity, however, the testimony by both Sharon and Randall at the show cause and sanctions hearing confirmed the veracity of the allegations in Sharon's petition to modify and in her affidavit.

*The July 14 TRO Hearing*

The first hearing in which there was testimony on Sharon's contentions was the July 14, 2003 show-cause hearing on her TRO, held three days after Sharon had filed her Emergency Petition and the same day that Randall filed an Ex Parte Response, a Motion for Alternate Dispute Resolution, and a motion to reappoint Linda Thompson as the children's ad litem.[3] Randall and the children then left for the cruise and the hearing was attended only by Randall's attorney, Thompson, Sharon, and an attorney substituting for Sharon's attorney, Van Orman, who was on vacation.

No witnesses except Sharon were sworn at this hearing. In response to the court's question of when she found out about the trip, Sharon testified that the children had been talking about it, but she knew none of the details as to when they were leaving and Randall had never told her that he was taking them on a cruise—testimony consistent with her affidavit. The court then asked what made her particularly concerned about the trip. Sharon referenced times that the children had come back with "bruises, scrapes, [and] their clothes are torn", she testified that the children had reported that their stepmother was harsh with them; and she explained that Andrew, the autistic eight-year-old, did not understand about safety around water and "[h]is father will not put safety gear on him." The court then asked Thompson, the newly reappointed ad litem, whether she had any concern

---

**3.** Thompson had been the ad litem for the children prior to entry of the divorce decree, and Sharon objected to her. The record indicates that after Sharon's emergency petition to modify was filed, Randall's attorney contacted Thompson, and he, Randall, and the children met with Thompson for several hours prior to the July 14 hearing—the same day Randall filed his ex parte response to

Sharon's emergency petition and his motion to reappoint Thompson. The court reappointed Thompson at the beginning of the hearing at Randall's request and over Sharon's objection and subsequently, in its sanctions order, ordered that Thompson's fees for this several hour communication prior to her reappointment be deducted from Sharon's pay.

that there was something uniquely unsettling about the cruise. Thompson replied, "From what I know right this second, based on not very much time, no." This unsworn, unpredicated opinion testimony was Thompson's sole contribution to the hearing.

In response to her own attorney's questioning, Sharon testified that Randall was not taking Andrew to his scheduled visits with therapists and had canceled Andrew's therapy 17 times in a row. Again, this concern echoed the concerns expressed in Sharon's affidavit. The court then asked the attorney whether he was describing an ongoing problem, "not something that has happened just in the last few weeks." When the attorney replied, "Right," the court ordered the TRO dissolved with respect to the cruise and terminated the hearing.

There is nothing in the testimony at the July 14 TRO hearing on which the trial court could have based its subsequent finding that the testimony regarding sanctions deceitfully differed from the testimony in Sharon's affidavit or that the facts in the affidavit, or the pleading it supported, were incorrect and deceitful. There was no testimony to contradict Sharon's testimony that Randall had not notified her of the cruise, that she did not know the details of when they were going,[4] that An-

drew did not exercise caution around water, that Randall had not taken precautions for Andrew's safety around water, that the children repeatedly returned home with bruises and tales of harsh treatment, or that Randall had repeatedly kept Andrew from his occupational therapy and had canceled his appointments for the entire month of July, during which time he alone had possession of the children.

*The October 16 and 22 Hearings on Sanctions*

The record of the October 16 and 22 sanctions hearing also supports the allegations in Sharon's affidavit and petition. The only contrary evidence was Randall's self-serving testimony on direct examination, which was corrected on cross-examination.

Randall admitted that Andrew did exhibit the "video replay" mode complained of in Sharon's affidavit, but stated, "It is a general trait of a child that is PDD."[5] He also admitted he had sent the children to bed without supper, but it was because they would not eat dinner and was an appropriate discipline. Sharon had mentioned the children's returning with sunburns, but had not mentioned bruises. Randall further testified that the children's fingernails had been cut "because they needed it." However, Sharon had never alleged that the children had been harmed

4. Randall's attorney's stated at the beginning of the hearing that Sharon had known about the cruise "since March. At least since March." However, his statement was not sworn, was not made by a person with knowledge of the facts, and was not predicated on any fact in the record. It was, therefore, not evidence. The statement did, however, corroborate Randall's sworn statements in his affidavit, filed *ex parte* that day, that the cruise was "scheduled to depart New Orleans, Louisiana at 4:00 p.m. on Monday, July 14, 2003," that Sharon "has known about these plans at least since March," and that "at no time since March 2003" had Sharon inquired in detail

or expressed any concern about the vacation plans. These allegations appear to have been the basis for Sharon's subsequent sanctions motion against Randall, which claimed that Randall had made false and misleading statements in his affidavit. The trial court refused to hear Sharon's motion for sanctions. However, as shown below, the only reasonable inference from the testimony at the sanctions hearing is that the statements in Randall's affidavit were, indeed, false.

5. Pervasive Developmental Disorder, a form of autism.

or that he and his current wife had not been diligent. He then testified glowingly about his and his wife's relationship with the children and testified, without objection, about Sharon's credibility.

On cross-examination, Randall testified that, in fact, Sharon "most likely" had complained to him about the matters made the subject of her affidavit, that she had frequently complained about his refusal to communicate with her about the children, and that he had failed to attend court-ordered, post-divorce therapy sessions. Randall also testified that he had told Sharon, "we were going on vacation but I don't think I told her specifically what we were going to do." He also admitted that he had not taken Andrew to therapy, but testified, "he most likely would not have therapy under my time of visitation." He did not recall whether he had ever taken Andrew to therapy between the date of the divorce and the filing of the petition to modify. He denied knowing that Andrew had trouble being away from his mother for extended periods and could not recall the details of his advising anyone on the cruise ship about Andrew's special needs or fear of water. He admitted that he had never told Sharon about the trip and had only overheard his son telling her that they were leaving "Saturday or Sunday." Finally, after denying that his own children and his current wife's children fought, Randall admitted, "Kevin got hit but I don't think there was a big bruise there." In short, in the October 16 hearing, Randall verified—but dismissed as insignificant—virtually all of the facts underlying the contentions in Sharon's affidavit and pleadings. The hearing was recessed.

When the hearing resumed a week later, on October 22, Randall testified that he disagreed with Sharon that Andrew needed a routine, but he refused to talk to her, and he had had no discussions with her

regarding safeguards for Andrew on his July trip.

On examination by Randall's attorney, Sharon testified that she "absolutely" believed, when she gave her affidavit, that the children's physical or emotional health might have been endangered by their "present living environment" with Randall. When she attempted to testify that the source of her knowledge was the children's statements to her, Randall's counsel objected that the answer was "non-responsive," and the court sustained the objection—but sua sponte on the ground that it was hearsay. Sharon then admitted that she had not personally witnessed the behavior at Randall's house. She also testified that she did not know when the vacation was to be and did not knowingly wait to file her emergency motion until three days before the trip was scheduled. She further testified that the children had told her some things that were true and some that were not, including that their father was taking them to Mexico, "but there have been many instances where their father tells them things and they turn around and tell me and I know that it's not exactly right."

On direct examination by her own attorney, Sharon testified that she had non-suited her petition for modification because there was no longer an emergency, the vacation having taken place, and because she had requested that the same issues be mediated, including addressing telephone access, Andrew's medical and emotional concerns, medical and educational issues and related costs, a therapist for the children, and parenting classes for both Randall and herself. The court sustained Randall's counsel's objections to Sharon's counsel's questions regarding whether Randall had attended court-ordered communication enhancement sessions or post-divorce marital counseling, despite Shar-

on's counsel's explanation that these were part of the underlying reason for the filing of the SAPCR "with lack of communication on a bunch of different issues and lack of any support from Mr. Keith."

In short, there is absolutely nothing in the record to overcome the presumption that Sharon's SAPCR was filed in good faith concern for her children's welfare and that the facts as she stated them in her pleadings were correct and were based on a reasonable investigation under the circumstances. Specifically, they were based on the children's reports of mistreatment in their father's house since the divorce, their knowledge of his plans, which he admittedly concealed from Sharon, and Sharon's own knowledge of Randall's refusal to communicate with her, repeatedly missed therapy sessions for Andrew, Andrew's needs as an autistic child and lack of caution around water, the children's bruises and sunburns on their return from Randall's house, Randall's admitted disagreement with her on the seriousness of these matters, and Randall's refusal to attend parenting sessions or post-divorce marital counseling. Even taking into account the trial court's role as the sole judge of the credibility of the witnesses, and thus discounting everything Sharon said as unworthy of being considered, Randall's own testimony confirms Sharon's allegations in all material aspects. Thus, I would hold that the trial court's holding that Sharon's SAPCR was groundless and filed in bad faith was arbitrary and capricious and made without reference to any guiding rules or principles.

### Harassment

The trial court's conduct at both the July 14 show cause hearing and the sanctions hearing makes clear that the real basis for the sanctions levied against Sharon was the trial court's agreement with Randall's allegation that Sharon had

known about the cruise for months and yet waited until three days before he was to leave to file her petition for modification as an emergency motion, knowing that such delay in filing the petition would hamper his plans and put him to the expense of defending against her motion for a TRO, as well as Randall's allegation that Sharon had refused to mediate her concerns, as required by the divorce decree. In other words, the real basis for the sanctions motion and order was the trial court's finding that Sharon had filed a groundless SAPCR to harass Randall. Construing the trial court's intent as the intent to punish Sharon for her refusal to mediate her concern and for the bad faith *timing* of a meritless petition, *i.e.*, for harassment—despite the court's failure to hold that the SAPCR was filed for purposes of harassment and despite the lack of any basis for finding her concerns baseless—I turn to the evidence of the timing of the petition and Sharon's responsibility for it.

At the July 14 TRO hearing, Sharon testified that the timing of the filing of the Emergency Petition to Modify Parent–Child Relationship was entirely due to her former attorney, Van Orman, and that she had tried to get the suit filed sooner, namely around the first of June, when she first found out that Randall was apparently planning a cruise out of the country with the children. She also testified that she had not known the details of the cruise until the week of sailing. There was no evidence at that hearing—which Randall did not attend—that Sharon herself timed the filing of the petition or that she had known about the cruise and the departure date for months and set the hearing on the day Randall and the children were to leave in order to harass Randall.

At the sanctions hearing, Randall admitted that he had not told Sharon about his travel plans, but he testified that he over-

heard his son tell her on the telephone that they were going on the trip "Saturday or Sunday"; he had then revealed to her that they were going that week, but "I didn't give her all specific details. She just knew we were going that week on vacation. From me, that's all she heard." In short, Randall admitted that he had never informed Sharon about the trip and that she had learned about it from their son on the week in which the trip was to occur. Randall also testified that after he was served with Sharon's Emergency Petition, he called his attorney and then "we went to Linda's [Thompson] office and spent several hours of Linda interviewing the children. Then from there we left to go on the cruise." He further testified that his attorney—not Sharon's—filed the motion to set an emergency hearing on July 14, the day he was to depart.[6]

While Randall testified on direct examination that Sharon had refused to mediate, he admitted on cross-examination that he "misspoke" when he testified that Sharon had never sought mediation, as required in the divorce decree, and that, contrary to his earlier testimony on direct examination, he had, in fact, refused to mediate Sharon's claims unless Sharon paid all the fees and costs "because I have no—see, no reason to mediate anything at this point."

There is thus nothing in the record to demonstrate that Sharon's emergency SAPCR was consciously filed at her insistence and for the purpose of causing great inconvenience and expense to Randall, that she scheduled the TRO hearing on the day she had long known he was to leave on the cruise, or that she had refused to mediate her concerns. In short, there is no evidence to show that Sharon timed the filing of her petition or the show cause for the purpose of harassing Randall. Thus, there is nothing in the record to support sanctions grounded in Sharon's filing a groundless suit and nothing to show that she filed her SAPCR with the bad faith intent to deceive the court as to the facts alleged in the petition or for the purpose of harassing Randall. Nor is there anything to support the trial court's attributing to Sharon the timing of the filing of her SAPCR or the scheduling of the show cause hearing as a basis for sanctions. Thus, there is no relationship between the severe sanctions levied on Sharon and any sanctionable abuse of the pleadings process on her part.

While the trial court could have found the evidence it permitted to be presented at the sanctions hearing insufficient to establish Sharon's right to modification of the divorce decree,[7] it could not have reasonably concluded that Sharon's allegations in her SAPCR and affidavit were incorrect, were made without a reasonable investigation, or were filed with the intent to deceive the court or for the purpose of harassing Randall. In my view, the trial court's sanctions award was based on a clearly erroneous assessment of the evi-

---

6. The record reflects that the hearing on Sharon's TRO was originally scheduled for July 23.

7. The trial court neither signed an order granting Sharon's non-suit nor permitted her claims to be tried prior to levying sanctions, although it retained plenary jurisdiction to try her SAPCR until it granted her non-suit or entered final judgment. *See* Tex.R. Civ. P. 162; *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997) ("The signing of an order dismissing a case, not the filing of a nonsuit, is the starting point for determining when a trial court's plenary power expires."); *Martin v. TDFPS*, 176 S.W.3d 390, 392 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *In the Interest of T.G.*, 68 S.W.3d 171, 179 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *See Martin*, 176 S.W.3d at 393 (trial court retains plenary jurisdiction over motion for sanctions pending at time of non-suit for 30 days after order granting dismissal).

dence and a clearly erroneous application of the law to the facts. It was entered without reference to any guiding rules or principles of law and was thus arbitrary, capricious, and unjust. *See Downer,* 701 S.W.2d at 241–42; *Alpert,* 178 S.W.3d at 410; *Randolph,* 29 S.W.3d at 276. I would hold that the trial court clearly abused its discretion in awarding sanctions against Sharon. Accordingly, I respectfully dissent.

I would reverse the judgment of the trial court and render judgment for Sharon.