Opinion issued April 15, 2021



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-19-00952-CV

————————————

**GUILLERMO ORESTES PUENTE, Appellant**

**V.**

**ALICIA MARIE PUENTE, Appellee**

---

**On Appeal from the 245th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-17611**

---

## MEMORANDUM OPINION

Guillermo Orestes Puente appeals from a final decree of divorce. After a bench trial, the trial court granted Alicia Marie Puente's petition for divorce, divided

the marital estate, imposed child support obligations on Guillermo[1], and permanently enjoined Guillermo from committing certain acts against Alicia and their minor children. In four issues, Guillermo contends that the trial court erred in finding him intentionally underemployed and setting his child support obligation above the statutory guidelines, mischaracterizing and distributing property, and permanently enjoining him from committing acts unsupported by the record.

We affirm the trial court's judgment as modified.

### Background

Guillermo and Alicia married and they had two children. In March 2018, Alicia petitioned for divorce from Guillermo, citing adultery and insupportability as the grounds for divorce.

At trial, Guillermo testified about his education and employment history. He held an MBA from the University of Houston-Victoria. He enrolled in a Ph.D. program. Although he had finished his coursework, Guillermo needed to complete his dissertation. He was a self-employed real estate broker and an e-commerce professor at Lone Star College. He stopped teaching shortly before trial to work on his dissertation. Guillermo presented evidence of his total business income.

---

[1] We will refer to the appellant and appellee by their first names because they share the same last name.

Alicia testified about her reasons for divorcing Guillermo, including his cruel behavior and affair with Alicia's sister, J. Owen. Alicia and Guillermo had agreed to allow Owen to live with them. Alicia invited Owen into their home to help Owen finish college and establish a relationship with Alicia and Guillermo's children. After Owen moved in, Alicia and Owen often argued about the house rules and Alicia's "motherly" behavior towards Owen. Their relationship began to crumble, and their communication stopped.

According to Alicia, Owen no longer wanted to spend time with her. Rather than spend time with Alicia, Owen spent late nights at the gym with Guillermo several times a week. Alicia began suspecting that Owen and Guillermo were having an affair because of the time they were spending together and because Alicia found makeup on his shirt. Alicia often confronted Guillermo about her concerns, and he denied having an affair each time. These confrontations would turn into "heated" and violent arguments. Alicia explained that she stopped accusing Guillermo of cheating in fear that he would become abusive and inflict bruises on her, which had happened in the past. She also testified in detail about abuse against her and the children.

The trial court granted the divorce on grounds of adultery and cruelty committed by Guillermo and entered the final divorce decree in October 2019. The trial court made a finding that "the presumption of joint managing conservatorship

3

is rebutted though a finding of family violence in the 280th Judicial District Court, Harris County, Texas" and appointed Alicia sole managing conservator of the children. It appointed Guillermo possessory conservator and ordered him to pay $763 in monthly child support. The trial court determined that Guillermo was intentionally underemployed and applied the child support guidelines to Guillermo's earning potential, as opposed to his actual earnings:

> The Court finds GUILLERMO ORESTES PUENTE is intentionally underemployed by working a free internship rather than earning income and no evidence was presented by [Guillermo] to what his suppressed income was; therefore, based on the evidence, self-employment guideline is ordered.

The trial court also ordered Guillermo to pay 75% of Alicia's 2018 tax liability, awarded a 60% share of the marital estate to Alicia, and permanently enjoined Guillermo from committing certain conduct against Alicia and the children.

Guillermo appealed.[2] He filed an appellate brief but Alicia did not. Even though Alicia did not file a brief, we have an independent duty to review the merits of the issues on appeal to determine whether reversal of the trial court's ruling is warranted. *See Yeater v. H-Town Towing LLC*, 605 S.W.3d 729, 731 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Sullivan v. Booker*, 877 S.W.2d 370, 373 (Tex.

---

[2] We have jurisdiction over this appeal because the trial court's order contains finality language and disposed of all pending issues and parties. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001).

App.—Houston [1st Dist.] 1994, writ denied) (failure to respond to appellants' brief does not automatically "entitle appellants to a reversal").

## Child Support

In his first issue, Guillermo asserts that the evidence is legally and factually insufficient to support the trial court's finding that he was intentionally underemployed or "that he could earn more than his actual, proven income." He also asserts that Alicia failed to carry her burden of showing that he is intentionally underemployed because she presented no evidence to support the trial court's intentional underemployment finding.

## A.    Standard of review

"A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Reddick v. Reddick*, 450 S.W.3d 182, 187 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). A trial court's failure to "analyze or apply the law correctly will

constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had sufficient evidence on which to exercise its discretion, and (2) erred in its application of that discretion. *Reddick*, 450 S.W.3d at 187. We conduct the applicable sufficiency review when considering the first prong of the test. *Id*. We then determine whether, based on the evidence, the trial court made a reasonable decision. *Id*. A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id*.

**B.  Applicable law**

The Texas Family Code establishes guidelines for the trial court to determine an equitable amount of child support. *See* TEX. FAM. CODE § 154.121. These statutory guidelines are presumed to be in the best interest of the child, but that presumption is rebuttable, and the trial court "may determine that the application of the guidelines would be unjust or inappropriate under the circumstances." *Id*. § 154.122. If it does so and the evidence rebuts the presumption that applying the guidelines is in the best interest of the child, the trial court may order payments in an amount other than that established by the guidelines. *Id*. § 154.123(a). If the court

deviates from the statutory guidelines, then the law requires the trial court to state its reasons for making such findings. *Id*. § 154.130(b)(4).

Parties must supply the court with proof of their financial status covering at least the last two years. *Id.* § 154.063. The trial court then reviews the obligor's net resources, including wage and salary income and self-employment income. *Id.* § 154.062(b). "If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." *Id.* § 154.066(a).

In calculating child support, the trial court must "engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings." *Iliff v. Iliff*, 339 S.W.3d 74, 82 (Tex. 2011). After the obligor has furnished the court with evidence supporting his or her current wages, the burden shifts to the obligee to show that the obligor is intentionally unemployed or underemployed. *Id.* The burden then shifts back to the obligor to offer rebuttal evidence. *Id*.

## C.    Intentional underemployment

Guillermo produced copies of tax returns from his real estate business for tax years 2016, 2017, and 2018. He also introduced copies of Form W-2s from Lone

Star College for the same tax years. Guillermo's 2017 tax documents showed he earned $37,938 in real estate profits and $8,901[3] from Lone Star College.

Guillermo testified that he only had two jobs and that he quit teaching because he needed to concentrate on his dissertation for his doctoral program. Alicia adduced testimony from Guillermo about his employment at a law firm. At first, Guillermo denied that he worked at a law firm at the time of the trial:

**Counsel**: Isn't it true that you also work at a law office?

**Guillermo**: I don't.

**Counsel**: Did you ever?

**Guillermo**: At one point, yes.

**Counsel**: When did you work there?

**Guillermo**: This may be 2015.

**Counsel**: Okay. Well, in 2018—or if you pull this up right now, this Ajmandi [sic] Law Office is still showing you as the business director, does it not?

**Guillermo**: I wouldn't recall that.

Guillermo later admitted that he volunteered at the law firm:

**Counsel**: Okay. Well, the truth is you work there as a business director as we speak, correct?

---

[3] Although the trial court entered $8,900 as Guillermo's wages from Lone Star College, we note the evidence shows the actual amount is $8,901. Guillermo does not dispute this minor discrepancy.

**Guillermo**: I volunteer there.

He then changed his testimony and denied working at the law firm:

**Counsel**: You work at this law office as a business director, don't you?

**Guillermo**: I don't work there.

Guillermo eventually admitted to volunteering at the law firm and provided reasons for doing so:

**Counsel**: So, why are you spending your time volunteering when you could be working more?

**Guillermo**: He's a marketing [search engine optimization] gentleman. So, I learn from him [sic] my marketing. He uses my work as an internship pretty much for his website. He just never took it down.

Guillermo testified that his doctoral program is why he volunteered at the law firm rather than seek out paid employment opportunities. He also testified that he has not looked for other employment.

The trial court determined that Guillermo's total income in 2017 was $46,838 and monthly income was $3,903.17. The trial court ordered Guillermo to pay Alicia $763 per month for child support. The trial court provided its reasons for deviating from the guidelines, finding that Guillermo was "intentionally underemployed by working a free internship rather than earning income." It also noted that Guillermo presented no evidence showing "what his suppressed income was."

9

Trial courts should be cautious of setting child support based on earning potential in every case in which an obligor makes less money than he or she has in the past. *Iliff*, 339 S.W.3d at 82. "Although some financial resources are indispensable to raising and providing for a child, the financial analysis will often not be the end of the court's consideration." *Id*. "A court properly considers the obligor's proffered rebuttal evidence of the reasons for an obligor's intentional unemployment or underemployment." *Id*. "This includes such laudable intentions by obligors who alter their employment situations to spend more time with their children, to live closer to their children in order to attend their events and be more involved in their lives, or to provide their children with better health benefits." *Id*. "Other objectives are also factors, such as whether an obligor alters his or her employment situation to start a new business, to gain further education, to become a public servant, or to address health needs." *Id*. Guillermo testified that obtaining an advanced degree is a reason to not be fully employed.

Even if the obligor presents rebuttal evidence of one or more of the factors, the trial court still maintains its broad discretion to determine whether applying the guidelines would be unjust or inappropriate or whether departure from the guidelines is in best interest of the child. *See* TEX. FAM. CODE § 154.122. The Texas Supreme Court has acknowledged that an obligor's "explanations are not always sincere, and the judge as fact finder has latitude to consider the testimony and evidence to make

10

the necessary determinations." *Iliff*, 339 S.W.3d at 82. The trial court may have determined that Guillermo's pursuit of a Ph.D. was a justifiable reason to rebut the intentional underemployment finding, yet weighed his explanation for volunteering or interning at a law firm heavily against his rebuttal evidence. Guillermo changed his testimony about working for the law firm multiple times. In fact, the trial court found Guillermo to be "not credible," reasoning that he "would seemingly selectively not remember events despite having testified to the contrary under prior sworn testimony admitted into evidence."

Guillermo has not shown that the evidence is legally or factually insufficient to support the trial court's finding that he was intentionally underemployed. More than a mere scintilla of evidence supports the trial court's finding. *See Brejon*, 314 S.W.3d at 30; *see also Iliff*, 339 S.W.3d at 81. And the evidence supporting the finding is not so weak that the trial court's finding is clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176.

Because the trial court's child support order complies with the requirements of the Texas Family Code, we cannot say that it abused its discretion in finding that deviation from the guidelines would be unjust or inappropriate, and we overrule Guillermo's first issue. *See Iliff*, 339 S.W.3d at 83; *see also In Interest of S.B.C.*, 952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no writ) (obligor who quit his job to go to law school was intentionally unemployed).

11

**Division of the Community Estate**

In his second issue, Guillermo asserts that the trial court abused its discretion by ordering him to pay 75% of Alicia's 2018 tax liabilities and penalties. He argues that Alicia incurred IRS liabilities and penalties because she withdrew money from her separate retirement account to pay for her legal fees. He also argues that he should not be responsible to pay Alicia's tax penalty because the trial court ordered each party to pay their own attorney's fees and legal expenses, and Alicia used the retirement account funds to pay for her own legal expenses.

**A.     Standard of review and applicable law**

Section 7.001 of the Texas Family Code requires the trial court to order a "division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001; *see Fuentes v. Zaragoza*, 555 S.W.3d 141, 162 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Each spouse is responsible for furnishing sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. *See Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ); *Mathis v. Mathis*, No. 01-17-00449-CV, 2018 WL 6613864, at *3 (Tex. App.—Houston [1st Dist.] Dec. 18, 2018, no pet.) (mem. op.). The trial court need not divide a community estate equally. *See id.* at 222. It may order an unequal division of the community estate as long as a reasonable

12

basis for doing so exists. *See Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

The abuse-of-discretion standard of review for property-division issues is the same as the standard we have cited above for determining child support. *See Fuentes*, 555 S.W.3d at 162 (citing *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987)); *Ayala v. Ayala*, 387 S.W.3d 721, 731 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We must remand the cause for a new division of the community estate if we find reversible error that materially affects the trial court's property division. *Jacobs v. Jacobs*, 687 S.W.2d 732–33 (Tex. 1985).

## B. Alicia's tax penalties

Alicia withdrew funds from her 401(k) account during the marriage and incurred an early withdrawal penalty of $23,126.35 on her 2018 tax return. Guillermo argues that the tax penalty is a debt incurred by Alicia's separate property and that the trial court erred by ordering him to pay a portion of the penalty.

All property acquired during or at the dissolution of a marriage is presumed to be community property. TEX. FAM. CODE § 3.003(a); *see Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011) (per curiam). The presumption applies to assets and liabilities alike. *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex. 1975). Thus, debt acquired by either spouse during the marriage is presumptively a

community debt, unless there is proof that the creditor agreed to look solely to the contracting spouse's separate estate for the satisfaction. *See id.*

The spouse seeking to rebut the community-property presumption bears the burden of establishing by clear and convincing evidence that property is separate property. TEX. FAM. CODE § 3.003(b). In determining whether the spouse claiming to rebut the presumption prevails, the trial court must "examine the totality of the circumstances in which the debt arose" and the "consideration of implied assent to the debt by the noncontracting party." *Cockerham*, 527 S.W.2d at 171.

Alicia did not testify about the withdrawal or tax penalty at trial. The only document purporting to evince the withdrawal and penalty was Alicia's Verified Inventory and Appraisement dated August 5, 2019, disclosing that she used the money for "legal expenses" and that she incurred a penalty of $23,126.36. Although Guillermo testified that he never withdrew money from Alicia's retirement accounts and that he did not know what accounts Alicia withdrew the money from, no evidence shows that the IRS agreed to look solely to Alicia's separate estate for satisfaction. *See generally Wierzchula v. Wierzchula*, 623 S.W.2d 730, 732 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ) ("The agreement between the borrower and the creditor is one of the primary indicators of the character of the loan to be made."). Nor is there evidence showing that Guillermo did not know how Alicia financed the divorce litigation.

Considering the totality of the circumstances of this case, we hold that the trial court could have reasonably concluded that Guillermo impliedly assented to this debt because funding the divorce benefitted Guillermo during the marriage. The IRS assessed the penalty against Alicia alone only because she withdrew the funds from her retirement account, not because the debt was separate.

Guillermo also argues that he is not responsible for Alicia's tax penalty because he filed his 2018 tax return as single and only spouses who file either jointly or married-filing-separately are jointly and severally liable for the taxes and penalties due on a tax return.[4] He introduced his 2018 tax return showing that he filed as single. Guillermo contends that he and Alicia could not have legally filed a joint return, and therefore, Alicia is solely responsible for the tax penalty.

---

[4] He also argues that there is no evidence that Alicia had actually filed her tax return or incurred a tax penalty. Inventory that has been admitted at trial constitutes evidence of the asset or debt. *Cf. Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 (Tex. App.—Austin 1994, no writ) ("We believe an inventory and appraisement is analogous to a pleading . . . unless a party's inventory is formally admitted into evidence at trial, that party may not rely on the inventory as evidence on appeal."). Alicia's inventory statement was properly admitted into evidence at trial. To the extent that Guillermo is challenging the amount of the penalty listed in Alicia's inventory statement, we find that Guillermo waived that issue by failing to object and obtaining an adverse ruling from the trial court. *See* TEX. R. APP. P. 33.1; *Monroy v. Monroy*, 03-10-00275-CV, 2011 WL 3890401, at *3 (Tex. App.—Austin Aug. 31, 2011, pet. denied) (mem. op.) ("An appellant who does not provide property values to the trial court cannot complain on appeal of the trial court's lack of complete information.").

15

The general rule is that if a husband and wife are separated, they are considered married for the entire year if no final decree of divorce has been entered by the last day of the tax year. 26 C.F.R. § 1.6013–4; 26 U.S.C. § 7703(a); *Kimsey v. Kimsey*, 965 S.W.2d 690, 696 (Tex. App.—El Paso 1998, pet. denied). In that case, they may file jointly or as married-filing-separately. 26 U.S.C. § 6013; 26 C.F.R. §§ 1.6013–1(a)(1), 1.6013–4("[T]he mere fact that spouses have not lived together during the course of the taxable year shall not prohibit them from making a joint return."). Here, the record reflects that the trial court entered the final divorce decree in October 2019, and thus the parties were still married before the last day of the 2018 tax year and could not have legally filed tax returns as single.

Guillermo also argues that he was married but living separate from Alicia, considering that he was not a member of Alicia's household for more than 6 months in 2018. Section 7703(b) provides that a taxpayer who is married under section 7703(a) and who files a separate return, maintains as his home a household which constitutes for more than half of the year the main residence of a child, furnishes over half of the cost of maintaining the household during the taxable year, and whose spouse is not a member of such household during the last 6 months of the year is not married for taxation purposes. 26 U.S.C. § 7703(b).

Even though the parties do not dispute that they were living apart, Section 7703(b) does not apply here because no evidence shows that Guillermo had paid

16

over half of the household expenses. Guillermo presented no documentation or testimony to the trial court about when and by whom any of the household expenses were incurred. Nor had the divorce been finalized at that time. *See generally Argyle v. C.I.R.*, 397 Fed. App'x 823, 824 (3d Cir. 2010) (rejecting husband's 7703(b) argument where husband who had lived separately from his wife during divorce proceedings could not file as single because he was neither divorced nor a party to a decree of separate maintenance).

Finally, Guillermo argues that the trial court erred by requiring him to pay 75% of Alicia's tax penalty because the trial court ordered each party to pay their own attorney's fees, expenses, and costs and Alicia used her retirement funds for legal expenses. As addressed in the standard of review above, the trial court maintains its discretion to determine a just and right division of the community debt, which it did here. *See Bush v. Bush*, S.W.3d 722, 740 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Debts and liabilities incurred jointly by the spouses, such as federal income tax liabilities, must be considered by the trial court in determining a just and right division of the community estate and must be apportioned to one or both of the spouses."). And even if Alicia paid her legal expenses using proceeds from her retirement account, both spouses are jointly liable for tax debts incurred during the marriage. *See id*. Her use of the funds did not change the character of the

17

tax penalty imposed on the community estate, and the trial court's order requiring each party to pay their own attorney's fees did not affect it either.

Because Guillermo failed to rebut the community-property presumption by clear and convincing evidence, we conclude that the trial court did not abuse its discretion. *See* TEX. FAM. CODE § 3.003(a) (2006); *Cockerham*, 527 S.W.2d at 171 ("Characterization of the debts as community liabilities is only one aspect of the circumstances to be considered in determining whether the debts are joint."); *Farish v. Farish*, 982 S.W.2d 623, 629 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (wife did not rebut the community-property presumption that debt and its proceeds belonged to community estate).

Guillermo points out that the final divorce decree inaccurately reflects the amount he must pay. The final divorce decree requires him to pay 75% of 2018 tax liability and listed $20,545.50 as the portion he needs to pay. But the evidence shows that the amount of the 2018 tax liability is $23,126.35.

While it is the trial court that has the authority to enter a *nunc pro tunc* judgment pursuant to Rule 23.1 of the Texas Rules of Appellate Procedure, we have the authority to correct a trial court's judgment when we have the necessary information to do so. *See* TEX. R. APP. P. 23.1, 43.2(b); *In re Estate of Tyner*, 292 S.W.3d 179, 183 (Tex. App.—Tyler 2009, no pet.).

18

After reviewing the record and final divorce decree, we agree with Guillermo that the final divorce decree contains errors in need of correction because 75% of $23,126.35 is $17,344.76, not $20,545.50. As a result, we modify the divorce decree to reflect that Guillermo owes $17,344.76 for his portion of the 2018 tax liability and overrule the rest of Guillermo's second issue as addressed above.

## C.  Division of marital estate

In his third issue, Guillermo asserts that the trial court abused its discretion in awarding Alicia 60% of the marital estate and 100% of the proceeds from the sale of the home. He specifically alleges that the evidence did not show that he had committed adultery.

A trial court need not divide the marital estate equally as long as the division is equitable. *See Lynch v. Lynch*, 540 S.W.3d 107, 128 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The trial court may consider several factors in dividing the community-property estate under Family Code section 7.001. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). *Murff* lists fault in the break-up of the marriage as a relevant factor. *See id.*

A trial court may, but need not, consider fault when dividing an estate. *Id.* "Generally, in a fault-based divorce, such as here, the trial court may consider the conduct of the errant spouse when making a disproportionate distribution of the marital estate." *Lynch*, 540 S.W.3d at 128. Physical abuse and adultery may justify

19

the court to disproportionately divide the community property. *See Alsenz v. Alsenz*, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (verbal and physical abuse by husband); *In re K.R.C.*, No. 05-13-01419-CV, 2015 WL 7731784, at *4 (Tex. App.—Dallas Dec. 1, 2015, pet. denied) (mem. op.) (adultery).

Here, the record supports the trial court's finding to grant the divorce on the ground of adultery. *See K.R.C.*, 2015 WL 7731784, at *4 ("The finding of adultery alone could support a disproportionate distribution of community property."). Alicia testified that Guillermo had an affair with Alicia's sister, Owen. Alicia testified that Owen spent late nights at the gym with Guillermo several times a week. She also testified that Guillermo put an air mattress next to Owen's bedroom after arguments between Guillermo and Alicia. Alicia also testified that she saw text messages from Owen to Guillermo consoling him after one of their arguments. She further testified she saw a Valentine's Day card that Owen had addressed to Guillermo.

The evidence also supports the trial court's determination that Guillermo committed family violence against Alicia throughout their marriage. Alicia testified that Guillermo assaulted her and bruised her body. She also testified at length about a family-violence protective order, which was before this court. *See Puente v. Puente*, No. 01-18-00583-CV, 2019 WL 3418510 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.). Per Alicia, Guillermo's violent behavior had escalated over time.

Texas courts have upheld asymmetrical divisions of a community estate based on facts like these. *See, e.g.*, *Lynch*, 540 S.W.3d at 130 (affirming wife's award of 100% of the community estate based on adultery and family-violence finding); *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 915 (Tex. App.—Beaumont 2006, no pet.) (affirming trial court's unequal division of community estate where record showed sufficient evidence of adultery and abusive treatment of wife); *Oliver v. Oliver*, 741 S.W.2d 225, 228–29 (Tex. App.—Fort Worth 1987, no writ) (trial court did not abuse its discretion in awarding wife 80% of marital estate where husband committed adultery); *Morrison v. Morrison*, 713 S.W.2d 377, 379–80 (Tex. App.—Dallas 1986, writ dism'd) (wife's over 80% of community estate was not abuse of discretion where husband committed adultery); *In re Svalesen*, No. 05–13–01151–CV, 2015 WL 4456096, at *4 (Tex. App.—Dallas July 21, 2015, no pet.) (mem. op.) (affirming 83% award of community estate to wife based on husband's history of family violence).

Guillermo also argues that the 60% award of the marital estate to Alicia conflicts with her award of all the home sale proceeds.

The final divorce decree provides:

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage. The Court further finds that the overall allocation of the marital estate listed below, excluding the parties' respective student loan debt which the parties stipulated that each will

21

be respectively personally responsible for, is a 60-40 division in favor of ALICIA MARIE PUENTE.

* * *

IT IS ORDERED AND DECREED that Petitioner, ALICIA MARIE PUENTE, is awarded the following as her sole and separate property, and Respondent, GUILLERMO ORESTES PUENTE, is divested of all right, title, interest, and claim in and to that property:

W-3. One Hundred Percent (100%) of the proceeds from the sale of the marital residence including, but not limited to any and all escrow, insurance, tax, warranty, and utility reimbursements or deposits or any other funds associated with the marital residence.

Here, the trial court awarded 60% of the marital estate to Alicia, except for the proceeds from the sale of the marital home, which it awarded entirely to Alicia. The trial court was empowered to order a division of the estate in a manner that the court found just and right. TEX. FAM. CODE § 7.001; *See Jacobs*, 687 S.W.2d at 732–33. Nothing requires the trial court to mirror the estate award when determining the award of home sale proceeds.

Finally, Guillermo asserts that the trial's court's judgment was unsupported by the pleadings. He argues that Alicia only requested 60% of the home sale proceeds in her pleadings and at trial, and the trial court abused its discretion by awarding Alicia 100% of the proceeds.

Under Rule 301 of the Texas Rules of Civil Procedure, a judgment must be supported by the pleadings, and "a party may not be granted relief in the absence of

pleadings to support such relief." *See* TEX. R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983).

In her written pleadings, Alicia requested the trial court to divide the community estate in a manner that it deemed just and right and asked the court to award a disproportionate share of the community estate. She also requested 60% of the proceeds from the sale of the marital home as well as general relief.

"A general prayer for relief will support any relief raised by the evidence that is consistent with the allegations and causes of action stated in the petition." *Moran v. Williamson*, 498 S.W.3d 85, 93 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see Sherrod v. Bailey*, 580 S.W.2d 24, 29 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). At trial, Alicia provided extensive testimony about Guillermo's abuse and adultery as her reasons for the divorce and accordingly requested a disproportionate share of the marital estate. When asked what percentage of home sale proceeds she was seeking, Alicia testified that she wanted the court to award "at least 60%."

We therefore hold that the trial court did not abuse its discretion by awarding Alicia 100% of the home sale proceeds because the evidence tracks the allegations and causes of action in her pleadings.

In sum, the trial court has broad discretion to divide the marital estate, and we must presume that it exercised that discretion properly. *Murff*, 615 S.W.2d at 698–

99. Guillermo has the burden of showing from the evidence that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion, and he has not carried his burden. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980); *Vannerson*, 857 S.W.2d at 672–74. Because the evidence supports the trial court's award, we hold that the trial court properly exercised its discretion in dividing the community estate.

We overrule Guillermo's third issue.

## Permanent Injunction

In his fourth issue, Guillermo challenges six of the ten permanent injunctions against him in the final divorce decree.[5] The final divorce decree permanently enjoined Guillermo from:

. . .

3. Engaging in any act that is intended to result in physical harm, bodily injury, assault or sexual assault against [Alicia] and/or the children, including but not limited to corporal punishment.

---

[5] Guillermo also disputes the finding of family violence in the Final Protective Order issued by the 280th Judicial District of Harris County, Texas. Guillermo has already raised this issue on appeal on two separate occasions. *See Puente*, 2019 WL 3418510, at *1; *In re Puente*, No. 01-19-00259-CV, 2019 WL 3418570, at *1 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (per curiam). We affirmed the trial court's ruling, concluding that legally and factually sufficient evidence supports the family-violence finding. *See Puente*, 2019 WL 3418510, at *5. We cannot address this issue because Guillermo did not file a motion for rehearing or petition the Texas Supreme Court for further review of our prior decision. *See* TEX. R. APP. P. 49.1, 53.1; *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 587 (Tex. 2017); *see also* TEX. R. APP. P. 49.7.

4. Engaging in any act that is a threat that reasonably places [Alicia] and/or the children in fear of imminent physical harm, bodily injury, assault, or sexual assault.

. . .

7. Traveling to non-Hague child abduction participant countries with the children.

8. Travelling [sic] internationally with any child under the age of 12.

9. Traveling internationally with any child prior to entering last stage of possession (Standard Possession Order).

10. Applying for any passports for the children.

He contends that the trial court abused its discretion in granting a permanent injunction in the final decree.

## A. Standard of review

We review a grant of a permanent injunction for an abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

## B. Failure to preserve injunction complaints

Guillermo contends that Alicia failed to plead or prove a wrongful act against her—namely, that he sexually assaulted her—and that the permanent injunction as an abuse of discretion. He also contends that Alicia failed to plead or prove that he placed the children in fear of imminent physical harm, bodily injury, assault, or

25

sexual assault. Finally, he argues that there is no allegations or evidence that he intended to internationally abduct or sexually assault them.

Our independent review of the record shows that Guillermo did not preserve his complaints for appellate review. *See* TEX. R. APP. P. 33.1(a). To preserve an issue for appellate review, a party must (1) make a timely and specific motion or objection and (2) obtain a ruling, or a refusal to rule, from the trial court. TEX. R. APP. P. 33.1(a)(1)(A); *see Interest of J.B.*, 605 S.W.3d 650, 656 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

A party who does not object and obtain a ruling waives his opportunity to have his claim reviewed on appeal. In *Livingston*, Robert Livingston sought to challenge a permanent injunction, enjoining him from approaching Catherine Livingston within 1,000 feet, from knowingly entering any property where Catherine was present, and from contacting her. 537 S.W.3d at 582. He contended, among other things, that the terms of the permanent injunction were ambiguous, overly broad, and prevented him from engaging in lawful activities, such as attending a concert or sporting event, which could inadvertently cause him to violate the terms of the permanent injunction. *Id.* at 598. Citing to Rule 33.1 of the Texas Rules of Appellate Procedure, a panel of this Court held that Robert waived his complaints about the permanent injunction on appeal because he did not object at trial to the form of the

injunction or file a post-judgment motion to complain that the language of the permanent injunction was overly broad. *Id.* (citing TEX. R. APP. P. 33.1).

In *Smith v. Texas Department of Family and Protective Services*, Smith sought to challenge a permanent injunction, contending that the terms of the permanent injunction were overly broad and effectively precluded her from engaging in lawful child-care activities. No. 03-13-00204-CV, 2015 WL 410487, at *2 (Tex. App.—Austin Jan. 29, 2015, no pet.) (mem. op.) The Austin Court of Appeals held that since Smith had not raised any of her complaints in the trial court, as required by Rule 33.1(a), she had failed to preserve any error on appeal. *Id.* at *4.

Likewise, in *Snell v. Spectrum Association Management L.P.*, Snell sought to challenge the terms of a temporary injunction, asserting that he had informed the trial court of his disagreement. No. 04-10-00285-CV, 2010 WL 3505139, at *3 (Tex. App.—San Antonio Sept. 8, 2010, no pet.) (mem. op.). Since the record did not show that Snell had asserted any objection at the trial court, the San Antonio Court of Appeals held he had waived his argument under Rule 33.1(a). *Id.*

Here, the record shows that Guillermo did not object to the permanent injunctions at trial or file a post-judgment motion challenging the injunctions. The 280th Judicial District Court of Harris County, Texas issued a Final Protective Order against Guillermo prohibiting the same conduct: sexual assault against Alicia and the children. Guillermo generally testified about the Final Protective Order but did

not object to its introduction or cross-examine Alicia to show that he had not sexually assaulted her or the children. Instead, he testified about his understanding of the final protective order and his unsuccessful appeal of it. With respect to the international travel and passport injunctions, Alicia requested a permanent injunction prohibiting Guillermo from traveling internationally with the children:

> Dad to have no international travel with the children until the children have [been] emancipated. All passports should be in the possession of the mother and Dad is enjoined from having or applying [for] any passports in regards [sic] to the children.

Guillermo did not object to these proposed restrictions on international travel and passport control or application. Instead, he testified that he desired to travel abroad with the children. Ultimately, the trial court enjoined international travel with the children to countries participating in the Hague Convention, once they were 12 years old. Guillermo did not object to this injunction. For these reasons, we conclude that Guillermo has waived these complaints on appeal. *See* TEX. R. APP. P. 33.1; *Livingston*, 537 S.W.3d at 589; *Snell*, 2010 WL 3505139, at *3; *Smith*, 2015 WL 410487, at *4.

We overrule Guillermo's fourth issue.

## Conclusion

Having overruled all of Guillermo's issues, we affirm the trial court's judgment as modified to correct the amount Guillermo owes for the 2018 tax liability.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Guerra.